CASE 62—PETITION EQUITY—DECEMBER 19.

# .Tapp, &c., v. Nock.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. VENDOR AND VENDEE—VENDOR ENTITLED TO TIME TO PERFECT TITLE—ABSTRACT OF TITLE.—A vendor who undertakes to make a good title and give general warranty deed does not undertake that he has the legal title, and he is entitled to a reasonable time in which to perfect his title and make a deed. Nor is it the vendor's duty, under such a contract, to furnish an abstract of title.

2. TIME OF ESSENCE OF CONTRACT.—Where no time is fixed in the contract for making the deed, time is not of the essence of the contract, although the vendor may have known that the property was purchased for immediate speculation; and the fact that the property declined in value before the deed was tendered does not release the vendee from his obligation, unless it can be shown that the vendor unnecessarily delayed to make the deed, and thereby the loss was sustained.

In this case the contract was made on the 28th of March, and deed was tendered on the 28th of May. At the time of the sale, the vendor had no deed to the property, but owned it by executory purchase. A part of the purchase price remained unpaid. There was no unnecessary delay in perfecting the title. *Held*—That the deed was tendered in time.

3. VENDOR AND VENDEE.—The fact that the deed to the plaintiff from his vendor recited that there was a lien for unpaid purchase money was not prejudicial to defendant, for the reason that the incumbrance had, in fact, been discharged; and, if not, the defendant still owed on the land a sum sufficient to discharge the incumbrance.

BROWN, HUMPHREY & DAVIE FOR APPELLANTS.

1. Nock, by his contract, represented that he owned the property, and would make good title; and he was bound to do so in a reasonable time. He did not own or acquire title in a reasonable time; nor did he show diligence or readiness in trying to make title; and, therefore, should not have specific performance. (Story's Eq. Jur., sec. 776.)

2. The property was bought in a period of rapid speculation in land, and with a view to resell at once, while the inflated market lasted; and this was known to Nock. This made time the essence of the contract, and imposed on Nock the duty of perfecting and conveying title promptly. He did not do so for several months, nor until the property had greatly lessened in value, and all chance for Tapp to sell it had passed. In such a case, specific performance will not be decreed. (Story's Eq., 776; Smith v. Causler, 83 Ky., 368.)

JOHN ROBERTS FOR APPELLEE.

1. The proof shows that there was no agreement to furnish abstract of title, and no such custom.

2. It was not necessary for appellee to have title of record at the time of sale; if he now has a good title, it is all the law requires.

Time is not of the essence of the contract, where no time is mentioned for performance. (Waterman on Specific Performance, secs. 460, 462; Tyree v. Williams, 3 Bibb, 367.)

If time is not of the essence of the contract, and the vendor is able to make a good title when the time for performance arrives, the contract will be enforced, although the vendor's title was defective at the date of the contract. (Tyree v. Williams, 3 Bibb., 367; Smith, &c., v. Causler, 83 Ky., 371: Logan v. Bull, 78 Ky., 617; Williams, &c., v. Carter, 3 Dana, 198.)

3. In any event, if appellants had objections to appellee's title, it was their duty to notify him, and give him opportunity to remove the incumbrance. (Waterman on Specific Performance, 420.)

4. The claim of appellants that they gave appellee notice of the abandonment of the contract, and that the appellee acquiesced in that abandonment, is not supported by the proof.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellants, having seen the real estate in controversy advertised in the Courier-Journal for sale by Stratton & Co., real estate agents, on the 28th day of March, 1887, applied to them for the purpose of purchasing it. The application resulted in the following agreement:

"LOUISVILLE, KY., March 28, 1887.

"*Mr. Samuel L. Nock:*

"We will give you six thousand seven hundred and twenty dollars, payable one-third cash, balance in one and two years, six per cent. and lien, for your property, ninety-six by two hundred feet, situated on the east side of First street, the south line of which is ninety-six feet north of Caldwell street. You to make a good title and give general warranty deed.

"[Signed]　　　　　　W. J. TAPP,

"L. S. PARSONS."

To which offer the appellee, in writing, replied very soon on the same day, as follows:

"LOUISVILLE, KY., March 28, 1887.

"*Messrs. W. J. Tapp and L. S. Parsons:*

"I will take six thousand seven hundred and twenty dollars for my property, situated on the east side of First street, the south line of which is ninety-six feet north of Caldwell street. The above amount, payable one-third cash, balance in one and two years, with six per cent. and lien. Will make you a good title, and give general warranty deed.

"[Signed]　　　　　　SAMUEL L. NOCK."

These two writings—one an offer to buy the specific property at a specified price, and the other an unqualified acceptance of the offer—constituted a valid and enforceable executory sale of the lot. These writings also obliged the appellee to convey to the appellants a good title to said lot by a general warranty deed, and also bound the appellants to accept such conveyance and deed. But the writings were silent as to the time in which such conveyance and deed should be made. Hence equity, as well as law, allowed a reasonable time in which to make the conveyance and deed.

On the 6th day of April, 1887, the appellants wrote to Stratton & Co. that the original and new deed had not been furnished them, according to the understanding that they should be furnished, in order that they might have the title investigated, and that the memorandum of title furnished them to enable them to have the title investigated, was not sufficient for that purpose; that they, therefore, receded from the offer made on the 28th day of March preceding.

The appellants, on the same day, received a reply to the effect that there was no agreement to furnish the appellants with old and new deed; that it was not customary for agents to do so; that the memorandum was sufficient; that, unless by special agreement, the seller was not bound to furnish abstract of title; that appellants would be held to the performance of the contract, &c. On the 28th day of May following the appellee tendered to the appellants a general warranty deed to this property, which the appellants refused to accept, upon the ground that they had theretofore receded from the proposition to purchase the property,

which they had the right to do, because of the fact that the appellee had unreasonably delayed to make a clear title to said land, time being of the essence of the contract.

As the question presented by this record is well settled by this court, any extended legal argument is unnecessary. In Cotton v. Ward, 3 Mon., 313, it is said: "Where a contract for the conveyance is merely executory, and a time fixed for the conveyance to be made, if there be a delay beyond that time in completing the title, which has been occasioned by the fault of the vendor, the purchaser will not, in general, be compelled to accept the title. Even in such a case, however, where the delay has been occasioned by the state of the title, and not by the negligence of the vendor, a court of equity, considering the time of performance not of the essence of the contract, unless expressly made so by the stipulation of the parties, will compel the purchaser to accept the title. The invariable inquiry of a court of equity, when about to pronounce a decree in such case, is not whether the vendor was able at the time when he entered into the contract, but whether he is able to do so, and a purchaser can not, it is said, insist upon being released from his purchase upon the master's report of a defective title, if the same is capable of being made good in a reasonable time."

In Woodson's Adm'r, &c., v. Scott, 1 Dana, 471, it is said: "In determining (referring to the discretion of the chancellor) that question, whilst he must ever feel it a duty to discountenance unnecessary delay of the party seeking his aid, and espec-

ially where it has been prejudicial to the other party, yet he can not but discriminate between that species of delay which has been the result of mere indolence or neglect, unaccompanied, as here, by any injury to the party complaining of it, and that other which is willful and designed, or at all indicative of a vascillation of purpose as to a *bona fide* fulfillment of the contract. A knowledge of the want of that active vigilance and strict punctuality in fulfilling such con tracts on the part of the community generally must compel him to overlook the delay in the one case, whilst his anxiety to discountenance fraud, or any semblance of bad faith, will cause him to refuse his aid in the other."

The proof is, that at the time of sale the appellee had no deed to the property; that he owned it by executory purchase from Shouse; that a part of the purchase price remained unpaid; that he perfected his title as soon as he could; that there was no unnecessary delay in doing so; that the recital in the deed from Shouse that the land was incumbered with a lien for a part of the unpaid purchase money was not prejudicial to the rights of the appellants; for the reasons, first, that the incumbrance had, in fact, been discharged; second, because the appellants owed on the land a sum sufficient to discharge said incumbrance, which they could not only have withheld from the appellee, but have discharged the incumbrance by paying the money to the proper parties. Also, there is no proof tending to show that the appellee or agent represented, or even intimated, to the appellants that they owned, at the time of the sale, the legal title to said land. He did, however, have such title as he

could make a valid and binding sale of, and this was all that was required. Also, there is not as much as a scintilla of proof in the case that time was to be of the essence of the contract; nor does the written agreement even intimate such a thing; nor is there any proof that the appellee knew, or had reason to believe, that the appellants were purchasing said property for the purpose of an immediate speculation, or of any speculation at all. The direction to Stratton & Co. to sell the property at eighty dollars per foot was given after the purchase, and had the effect to retain said company as their agent; therefore, it carried no implied knowledge home to the appellee. Besides, if it be true that the appellants did purchase this property for immediate speculation, and the appellee knew it, the written agreement, nevertheless, does not show that time was to be of the essence of the contract. On the contrary, it shows that the appellee was to have a reasonable time in which to make the deed, &c.

Also, as just intimated, according to the proof, the appellee used all reasonable dispatch in perfecting his title and making the stipulated conveyance. Also, there is no substance in the contention that the appellee did not furnish an abstract of his title; for he, in the first place, did not agree to do so; in the second place, he had no legal title; nor did he covenant or agree that he had such title; his agreement was, that he would thereafter convey such a title by general warranty deed, and he did convey it; and, as we think, as soon as he could procure it. Nor at the time of the conveyance was there even an implied understanding that he had the legal title; for there are many—indeed, a great many—sales of mere equitable titles in this State, and the parties thereafter procuring the

legal title, and then conveying the same by deed. There is nothing in this case tending to show that the parties intended to, or did, adopt a different course of dealing.

The delay in getting the deed certainly was contemplated, else the parties would have stipulated differently. The fact that the property declined in value does not release the appellants from taking it, unless it was shown that the appellee unnecessarily delayed to make the deed, and thereby the loss was sustained. It was very easy to make time the essence of the contract by inserting it in the writing, if the parties had desired it; but they did not so insert it; therefore, it must be presumed that they did not desire it.

In the case of Smith v. Cansler, 83 Ky., 367, a time was fixed in which to make a deed, and Smith neglected to make the deed within the agreed time; and between the agreed time of making the deed and the time that it was tendered, the stable burned down. The court held that time, in that case, was of the essence of the contract; and Smith, having negligently failed to comply with the contract within the time agreed, and the property, after such failure, having been destroyed by fire, the vendee was not bound to accept the title.

The expression, as quoted from Story in said case, to the effect that the party insisting on a specific performance must "be ready, desirous, prompt and eager to perform the contract," simply means that such party must not only be willing to perform it, but he must use, without unnecessary delay, all the means practically at his command to perform it.

The judgment is affirmed.