## LANGFORD v. BIVINS.    (No. 1716.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 1, 1920.    Rehearing Denied Dec. 22, 1920.)

1. **Mines and minerals ⊝➙74—Whether oil lease contract had been unconditionally accepted held for court.**

Contract to convey an interest in an oil lease having been in writing, evidenced by telegrams, the issue of whether the seller's proposition had been unconditionally accepted and the trade consummated by the buyer is primarily one of law for the court.

2. **Mines and minerals ⊝➙74—Time of essence of contracts for sale of leases.**

Time is of the essence of contracts for the sale of mineral leases and lands.

3. **Mines and minerals ⊝➙74—Vendor of oil lease need not furnish abstract of title.**

There is no implied obligation resting on the vendor of an oil lease to furnish abstract of title.

4. **Mines and minerals ⊝➙74—No complete contract to convey oil lease resulted, in view of counter proposition.**

Where defendant wired he would sell an oil lease at $50 an acre, with direction to wire immediately if interested, and plaintiff inquired as to the length of lease, rentals, and whether defendant could furnish abstract, etc., whereupon defendant advised as to the length of lease, and that he had abstract, and plaintiff wired in return that he would take the lease, directing defendant to draw through a bank for the full amount, giving reasonable time for examination of abstract, no complete contract

to convey the lease to plaintiff resulted, as defendant's offer contemplated immediate acceptance, and he could not be required to wait for examination of the abstract by plaintiff's counsel, nor forced to appoint the bank as his agent to deliver assignment and receive consideration; the purported acceptance by plaintiff constituting a counter proposition, prohibiting formation of contract until acceptance.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Suit by W. S. Langford against Lee Bivins. From a judgment for defendant, plaintiff appeals. Affirmed.

Mathis & Caldwell, of Wichita Falls, and Kimbrough, Underwood, Jackson & Simpson, of Amarillo, for appellant.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellee.

HALL, J. Appellant, Langford, sued appellee in the district court of Wichita county to recover damages for the alleged breach of a contract to convey an interest in an oil lease, which he alleges appellee held upon certain premises situated in that county. The venue was changed to Potter county, where the case was tried before the court without the intervention of a jury. The contract is evidenced by certain telegrams, which we will set out. All of the telegrams alleged to have been signed by appellee, except the last two, were sent without appellee's knowledge, by his secretary and bookkeeper, Smith.

On October 19, 1919, at 4:52 p. m., Smith, in appellee's name, sent appellant, at Wichita Falls, the following day message:

(1) "Understand from W. E. Oliver you might buy oil lease on Lena Sparks survey. Will sell this one hundred and five acres at fifty dollars per acre. If interested, wire at my expense, immediately, as other party wants it."

On the same day, at 6:56 p. m., appellant wired appellee at Amarillo:

(2) "Your wire. Advise length of lease and rentals. Can you furnish abstract and who examined same? If satisfactory, will accept and have City National Bank here guarantee my trade."

On the following day, at 1:29 p. m., Smith wired appellant:

(3) "Lease runs three years from 18th December, 1918. Rental three dollars per acre per year. I have abstract. Answer."

On the same day appellant wired appellee at 2:45 p. m.:

(4) "Will take lease. Draw through City National for full amount, giving reasonable time for examination of abstract."

On the same day, at 2:28 p. m., the City National Bank of Wichita Falls, wired appellee:

(5) "W. S. Langford entirely reliable and good for his contracts. Any deal he makes will be fully complied with."

On the same day, at 8:53 p. m., appellee, in person, wired appellant:

(6) "Message too late. Deal called off."

October 21st, at 6:53 a. m., appellant wired appellee:

(7) "Had City National wire you that I would fulfill my contract. Attach assignments to draft and send abstract direct to me. Will have same examined promptly and pay draft. Answer."

On the same day, at 6:17 p. m., appellee, in person, wired Langford:

(8) "As I wired you yesterday, all deals are off."

The appellant's petition by appropriate allegations shows the execution of the contract and the refusal of appellee to comply with its terms, alleging further that the city of Wichita Falls, where appellant resided at the time of the transaction, was the central point of a large extent of country in which the development of the territory for oil and gas has become a principal industry, and at which many transactions in the making of oil and gas leases and the transfer, assignment, and sale thereof had been carried on; that by reason thereof many usages and customs had become established relative to such trading in oil leases in Wichita Falls and neighboring towns and country, including Amarillo; that such customs govern and facilitate trading and quick consummation of sales and transfers of oil and gas leases, and that it had become and was an established custom in Wichita Falls and Amarillo, the place of residence of plaintiff and defendant, respectively, in closing a purchase of oil or gas leases situated in a section of country near Wichita Falls, when the owner of such lease lived elsewhere, that the owner or vendor of lease, in consummating a sale of same, should draw on the purchaser thereof through some bank or other agent at Wichita Falls, for the agreed price of the lease, and attach to his draft a transfer and assignment of the lease and the abstract of title thereto, showing title in the vendor, and to allow the purchaser a reasonable time to examine the abstract, after which, if the title was good, it was the custom for the purchaser to forthwith pay the draft and receive the assignment, abstract, and original lease, and the bank or other agent, through whom the draft was drawn, would transfer the purchase price of the lease to the vendor.

It was further alleged that the defendant well knew of all such customs, and that the correspondence between the parties relative to the sale of the lease was conducted by them with reference to such custom, and with

the intention on the part of both parties to abide by the custom above mentioned, and have it govern and control their correspondence and resulting contract. He further alleges that the words in the fourth telegram, "Draw through City National Bank for full amount, giving reasonable time for examination of abstracts," were intended to and did express a mere request by plaintiff to defendant, and were not intended to and did not constitute a condition or stipulation for the closing of the deal in that way, but expressed and were intended to express an acceptance by plaintiff of defendant's offer as made in defendant's telegram quoted above. If defendant had made any objection to complying with this request, it would have been waived, and payment made at any time and place defendant required, and even if he understood it to be, or if it was, an additional term, defendant did not object, but acquiesced in the same by his telegram No. 6; that likewise the language in plaintiff's telegram No. 7, "Attach assignment to draft and send abstract to me. Will have same examined promptly and pay draft," was intended to and did express a mere request, and not a condition of consummating the deal, and would also have been waived, if defendant had objected, but defendant, in the same manner as stated above, acquiesced in and agreed to the request, and waived all objection thereto, and made same a part of his agreement by failing to object thereto, by sending the telegram, "Message too late; deal called off." In reply to this pleading appellee filed his first amended original answer, containing a general demurrer, several special exceptions, none of which seem to have been urged, and a general denial.

It was shown during the trial that the lease in question was owned by the wife of appellee. For convenience in referring to them, we number the several telegrams in the order of their sequence, according to the day and hour they were delivered to the telegraph company. These telegrams, as explained by further oral testimony, show the extent of the negotiations between the parties and furnish the only evidence of the contract, if any, between them. The first telegram is simply an offer by appellee to assign to appellant his lease of 105 acres of land in Wichita county, at $50 per acre. The second is an inquiry by appellant as to the duration of appellee's lease, the rentals payable under it, whether appellee can furnish an abstract of title, and information as to who has examined the abstract. He also agrees to accept appellee's offer, if upon receipt of this information he is satisfied, and volunteers to have the Wichita Falls bank guarantee performance by him. In the third telegram appellee informs appellant that the lease is for a term of three years, beginning December 18, 1918, that the annual rental is $3 per acre, and

that he has an abstract of title. According to the notations on the telegram, it was lodged with the telegraph office at Amarillo October 20, at 1:29 p. m. The fourth was sent from Wichita Falls, by appellant, at 2:46 p. m. the same day, and informs appellee that appellant will take the lease. If nothing else had been added, the offer would have been accepted, resulting in a contract binding upon both parties; but in the same telegram appellant instructs appellee to draw through the Wichita Falls bank for the consideration, giving reasonable time for examination of abstract. The fifth telegram is from the bank, informing appellee that appellant is entirely reliable, is good for his contracts, and will comply with any deals he may make. The sixth was sent by appellee in person at 8:53 p. m. October 20th, and informs appellant that his message was too late, and calling off the deal. The seventh, sent by appellant at 6:53 a. m. the following day, apparently supplements his former telegram, which we have designated as No. 4, and informs appellee that he had had the bank to wire appellee that he would fulfill his contracts, directing appellee to attach the assignment of the lease to a draft on him, and to send abstract direct to appellant, further promising to have it examined promptly and then pay the draft. The eighth and last was sent by appellee, confirming his wire of the day before, calling off the deal.

[1, 2] The contract being in writing, evidenced by the telegrams, the issue of whether appellee's proposition had been unconditionally accepted, and the trade consummated, is primarily one of law for the court. We think the court's holding is correct. It seems to be settled law that time is of the essence of contracts for the sale of mineral leases and lands. Waterman v. Banks, 144 U. S. 394, 12 Sup. Ct. 646, 36 L. Ed. 479, and authorities there cited. It appears from the record that the land in question was in the neighborhood of what is known as the K–M–A oil district. Appellant testified:

"In reference to whether or not I was sending wires pretty fast, I will say I thought I could make a piece of money on it when he wired me he would take $50 for it. As a matter of fact, things can happen pretty quick around Wichita Falls in the oil game in 24 hours, or such a matter. Fifteen minutes is ancient history there. That is a common expression."

[3] It was neither alleged nor shown that the usage and custom contended for by appellant was so general and notorious that appellee would be conclusively presumed to have contracted with reference to it. The allegations and proof show a particular custom limited to Wichita Falls and vicinity, and to purchasers residing at Wichita Falls of leases from owners residing elsewhere. Appellee de-

hied having knowledge of such custom, and said it was his practice to close his deals for leases in his office. It therefore follows that, when appellant wired appellee on October 20th to draw on him, through the City National Bank of Wichita Falls, for the purchase money, and to give a reasonable time for examination of the abstract, and on the following day wired him to attach the assignment of the lease to the draft, to be sent through the bank, and send the abstract direct to appellant at Wichita Falls, he was requiring appellee to do something not in accordance with any usage known to appellee, or by which appellee was bound. Appellee had not agreed to furnish an abstract as a condition precedent to the consummation of the sale, and there is no implied obligation resting upon a vendor to furnish an abstract of title. 39 Cyc. 1516; Smith v. First National Bank, 43 Tex. Civ. App. 495, 95 S. W. 1111; Thompson v. Robinson, 65 W. Va. 506, 64 S. E. 718, 17 Ann. Cas. 1109; Espy v. Anderson, 14 Pa. 308; Tapp v. Nock, 89 Ky. 414, 12 S. W. 713; Turn Verein Eiche v. Kionka, 255 Ill. 392, 99 N. E. 684, 43 L. R. A. (N. S.) 44.

Appellant's telegram of October 21st clearly indicates that the draft would not be paid until after the abstract was examined and the title approved. It is true he promises to have the abstract examined promptly, but in a business in which "15 minutes is ancient history," and in a locality "where things can happen pretty quick" in the "oil game," it cannot be said that, when appellant wired appellee to draw through the bank at Wichita Falls, giving reasonable time to examine the abstract, and to send assignment of lease, with draft attached, to that bank, the draft to be paid after title was approved, "were simply suggestions by Langford in regard to the most expeditious manner to govern the performance of the contract," as is contended by appellant.

[4] In a transaction where no cause for a sudden rise or fall in the selling price of lands or leases existed, and where time was not of the essence of the contract, such contention might be entertained; but in this case, during a "reasonable time for examination of the abstract," although it may be done "promptly," appellee's leasehold interest might have become either valueless or worth many times the price asked. Under such circumstances we cannot construe the language of appellant's telegrams numbered 4 and 7 to be an unconditional acceptance of and identical with the terms of appellee's offer. It varies from it and adds new terms, in that it requires the deal to be closed in Wichita Falls, instead of Amarillo; demands an abstract of title and time for its examination before payment of the consideration. The offer made in telegram No. 1 contemplated immediate acceptance. Appellee could not be required to wait until appellant's counsel could examine the abstract, nor forced to appoint the bank at Wichita Falls as his agent to deliver the assignment and receive the consideration. He had not agreed to close the deal at Wichita Falls. Scott v. Grant et al., 37 Tex. Civ. App. 169, 84 S. W. 265. Although in the fourth telegram appellant states he will take the lease, by the subsequent language of the telegram, and of supplemental telegram No. 7, he so qualifies his acceptance as to make it of no effect. We conclude that, because of the language of these two telegrams, the acceptance was not absolute; but they constitute rather a counter proposition, and until its acceptance by appellee no contract could have been formed. Brillhart v. Beever, 198 S. W. 973; Foster v. N. Y. & Tex. Land Co., 2 Tex. Civ. App. 505, 22 S. W. 260; Connell v. Nickey, 167 S. W. 313, and authorities cited.

It becomes unnecessary to consider the remaining assignments.

The judgment is affirmed.