**EDWARDS v. O'NEAL.**

No. 12255.

Court of Civil Appeals of Texas. Fort Worth.
Jan. 25, 1930.

Rehearing Denied May 3, 1930.

Mike E. Smith, of Fort Worth, and W. S. Moore, of Gainesville, for appellant.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, and John W. Culp, of Gainesville, for appellee.

DUNKLIN, J.

Joseph Edwards instituted this suit against John O'Neal to recover damages on alleged breach of the defendant's contract to drill an oil well, and from a judgment denying him a recovery he has prosecuted this appeal.

The contract made the basis of the plaintiff's suit is as follows:

"This contract and agreement made and entered into this the 14th day of July A. D. 1927, by and between Joseph Edwards, hereinafter called first Party and John O'Neal hereinafter called Second Party.

"Witnesseth: The first [party] represents that he has up in escrow a certain oil and gas lease upon lands out of the Thomas Scott Survey, Cooke County, Texas, upon which he desires to have a well drilled for the discovery of oil or gas, and the second party has agreed to drill said well on the following terms and conditions.

"Second party agrees to furnish the derrick, rig, dig the slush pit, furnish all labor, fuel oil, water, tools, repairs and all other items of expense incident to the drilling of said well at his own expense, and is to drill said well to a total depth of 1,800 feet or oil or gas in paying quantities at a lesser depth; it being understood in this connection that in the event the Elenberger lime is encountered before the 1,800 foot depth is reached that the second party will be permitted to cease drilling and this contract will be considered completed at that depth.

"Said well is to be spudded in on or before the 15th day of August, 1927, and is to be drilled at a location to be agreed upon between the two parties hereto on the Southeast 40 acres of Block 2, J. Backer Land, Thomas Scott Survey, in Cooke County, Texas.

"As a consideration for the drilling of said well as above outlined, the first party binds and obligates himself, when said well is actually spudded in, to execute and deliver to the second party assignments of valid oil and gas leases upon the following described property, to wit:

"First Tract: An assignment to an undivided three-fourths interest in and to the remaining $13/16$ interest of an oil and gas lease on the Southeast 40 acres of the J. Backer land, Block 2, Thomas Scott Survey, Cooke County, Tex.

"Second Tract: An assignment to an undivided one-half interest in and to the remaining $19/24$ interest in and to an oil and gas lease on the Northwest 20 acres of the East one-half of Block 11, A. G. Ilseng land, Thomas Scott Survey, Cooke County, Texas.

"As a further consideration for the drilling of said well, the first party binds and obligates himself to deliver to the second party, a purchase letter from H. H. Martin of Wichita Falls, Texas, in the amount of $2500.00, and in this connection the first party binds and obligates himself at his own expense to make any necessary corrections to the title to be delivered under said purchase letter so that when the well is completed said purchase letter will be due and payable.

"It is understood that the second party is to furnish the casing to test sands and that in the event the well is a producer the first party will pay his one-fourth of the cost of same laid down at the well.

"Should a producing well be discovered, then the second party shall have the management and operation said 40 acre tract first described above; second party shall also have the option of drilling any additional wells at the prevailing prices for the same kind and class of work in that vicinity. Second party shall also keep the books and generally manage said wells and shall submit at least monthly itemized bills of all operation and maintenance expense to the first party and the first party agrees to promptly pay his pro rata part of such expense. In this connection it is also agreed that the second party shall charge as a supervision and overhead expense an amount equal to 5% of the operating and development expense.

"It is further agreed that in the event either party hereto wishes to sell his interest in the above described leases that he will first give to the other party hereto the option to purchase the same at the price offered by a bona fide purchaser.

"It is also further agreed that this well will be drilled and the lease operated as a joint ownership by John O'Neal and Joseph Edwards; but in no wise shall this constitute a partnership.

"This contract shall extend to and be binding upon the parties hereto, their respective heirs and assigns.

"Witness the hands of the parties hereto at Wichita Falls, Texas, on the 15th day of July A. D. 1927.

"[Signed]  J. W. Edwards
"Party of the First Part.
"[Signed]  John O'Neil
"Party of the Second Part."

According to allegations in plaintiff's petition, by consent of the parties, the time in which to begin the drilling of the well was extended until September 21, 1927. Plaintiff alleged that he performed or offered to perform all the obligations imposed on him by the terms of the contract, but that the defendant failed and refused to drill the well or to spud in the same and thereby breached his contract, and thereby became liable to the plaintiff for the reasonable cost of drilling the well in accordance with the terms of the contract, which was the sum of $10,000; and a judgment was sought for such damages.

Among other defenses, in addition to a general denial, the defendant specially pleaded that at the time the written agreement was entered into the plaintiff orally agreed and bound himself to deliver to the defendant an abstract of title showing a good and merchantable title to the lease to be conveyed to the defendant, and further that the assignment by the plaintiff to be thereafter executed would include a covenant for a good and merchantable title to such leasehold interest, free of all liens and incumbrances. It was further alleged that at the time the contract was entered into the parties thereto understood that the stipulation for the assignment to the defendant of "valid oil and gas leases" meant and bound the plaintiff to convey a good and merchantable title to such leases free of all liens and incumbrances; and that, after the execution of the contract, the parties acted upon and construed the contract as importing that meaning. It was further alleged that, independently of any parol agreement or un-

derstanding between the parties at the time of the execution of the contract, and of the construction placed thereon by the parties thereafter, such was the legal meaning and effect of the plaintiff's contract. It was further alleged that at the time the contract was entered into the plaintiff orally represented that he then had in escrow leases showing a good and merchantable title vested in him free of all liens and incumbrances, which representations were untrue; that the defendant had the title to the land on which the well was to be drilled examined by a competent attorney, who furnished to him a written opinion pointing out certain defects in the title, none of which were cured by the plaintiff, although he agreed to make an effort to cure the same; and that, after plaintiff had reported to the defendant his inability to cure such defects, it was agreed between the parties that the contract was at an end, and that defendant would not be required to drill the well as stipulated in the contract. It was further alleged that the failure of the defendant to drill the well was caused solely by the failure of plaintiff to assign or offer to assign to him a good and merchantable title free of incumbrances, to the interest in the leases stipulated in the contract.

Following are special issues submitted to the jury with their findings thereon:

"Special Issue Number One: What would have been the reasonable cost of drilling an oil well to the depth of eighteen hundred feet on the land described in the plaintiff's petition in August or September, of 1927? Answer giving the amount. Answer: $4,500.00.

"Special Issue Number Two: Did the plaintiff and the defendant, contemporaneously with the making of the written contract, and as a part of the consideration of the same, agree that the plaintiff should furnish to the defendant an abstract of title to the land described in the contract showing a good and merchantable title thereto? Answer yes or no. Answer: Yes.

"Special Issue Number Three. If you have answered special issue Number Two in the affirmative then you may answer this question:

"Did the defendant at any time prior to the expiration of the time for the beginning of the drilling operations, as provided for in the contract, agree to waive the objections which had been raised to the tile by his attorney and to perform his part of the contract without having those objections cured? Answer Yes or No. Answer: No.

"Special Issue Number Four. Did the plaintiff at the time the contract was made represent to the defendant that he, the plaintiff, owned an oil and gas lease on said land which was then in escrow? Answer yes or no. Answer: Yes.

"If you have answered Special Issue Number Four in the negative you need not answer this question; if you have answered Number Four yes then answer this question:

"Special Issue Number Five. Was said representation material and relied upon by the defendant in entering into the said contract? Answer yes or no. Answer: Yes."

Error has been assigned to the submission of special issue No. 2, set out above, and to the admission of parol testimony offered by the defendant to prove the affirmative of that issue, all upon the ground that the written contract between the parties was certain and unambiguous in its terms, and must be conclusively presumed to embody the entire agreement between the parties to the exclusion of any additional parol agreement made prior to or contemporaneously with the execution of the written contract, the effect of which would be to enlarge the written obligations of the parties. In support of those assignments, the following authorities are cited: Bigham v. Bigham, 57 Tex. 238; Crouch v. Johnson, 7 Tex. Civ. App. 435, 27 S. W. 9; First Greenleaf on Evidence, p. 275. Those authorities announce the general rule substantially as stated in appellant's proposition. Appellant also cites Langford v. Bivins, 225 S. W. 867, 870, by the Amarillo Court of Appeals (writ of error dismissed by Supreme Court for want of jurisdiction) in which the following was said:

"Appellee had not agreed to furnish an abstract as a condition precedent to the consummation of the sale, and there is no implied obligation resting upon a vendor to furnish an abstract of title. 39 Cyc. 1516; Smith v. First National Bank, 43 Tex. Civ. App. 495, 95 S. W. 1111; Thompson v. Robinson, 65 W. Va. 506, 64 S. E. 718, 17 Ann. Cas. 1109; Espy v. Anderson, 14 Pa. 308; Tapp v. Nock, 89 Ky. 414, 12 S. W. 713; Turn Verein Eiche v. Kionka, 255 Ill. 392, 99 N. E. 684, 43 L. R. A. (N. S.) 44."

And to the same effect Summers on Oil and Gas, p. 551. Appellant also cites Anett v. Stephens, 199 Ky. 730, 251 S. W. 947; Miles v. United Oil Co., 192 Ky. 542, 234 S. W. 209, 19 A. L. R. 602, and other authorities embodying announcements substantially to the same effect as the following from 16 R. C. L. 843: "No covenants of title are implied in an assignment of a lease contract—such assignment only puts the assignee in the same place as was the assignor."

Appellant also invokes the maxim of law, "expressio unius est exclusio alterius," and insists that, since the plaintiff bound himself "at his own expense to make any necessary corrections to the title to be delivered under said purchase letter, so that when the well is completed, said purchase letter would be due and payable," and there was no assurance of title to the oil leases in which the defendant was to acquire an interest, then any assurance of title to the latter must be excluded.

Numerous authorities are cited in support of that general rule, such as 13 Corpus Juris, 537; Waggoner Estate v. Sigler Oil Co., 19 S.W.(2d) 27 (Sup. Ct.), and other authorities therein cited.

Appellant also cites Miles v. United Oil Co., 192 Ky. 542, 234 S. W. 209, 19 A. L. R. 602, and other authorities announcing in substance that an agreement merely to assign a lease does not imply a warranty of title to the assignee; and such authorities as VanEps v. Schenectady, 12 Johns. (N. Y.) 436, 7 Am. Dec. 330, to the effect that an agreement to execute a deed does not imply the further obligation to embody in the deed a warranty of title.

It is the settled rule in this state that an oil and gas lease is an interest in realty, and contracts relating thereto are governed accordingly. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566. For that reason alone much that has been said in the decisions of other states cited by the appellant relative to an agreement to assign an ordinary lease which does not convey an interest in realty has no proper application in this case.

In Phillips v. Herndon, 78 Tex. 378, 14 S. W. 857, 858, 22 Am. St. Rep. 59, the following is said:

"It is alleged that Herndon obligated himself to convey the land 'in fee-simple, by warranty deed,' while the bonds, offered in evidence, are conditioned that he would convey the lands 'by a good and valid deed or deeds in common form;' but this constitutes no variance, for an obligation to make 'a good and valid deed in common form,' binds the obligor to execute a warranty deed, and the petition correctly declared the legal effect of Herndon's obligations. Vardeman v. Lawson, 17 Tex. 11."

To the same effect was Green v. Chandler, 25 Tex. 157.

The following is quoted from Maupin on Marketable Titles (3d Ed.) p. 20:

"The purchaser is entitled to require from the vendor, in the absence of any provision in the contract a good marketable title free from all defects or encumbrances. The right to a good title does not grow out of a contract between the parties, but is given by law, and is implied in every contract of sale. And the rule is general that a contract for the sale of lands which is silent as to the title or interest to be conveyed, implies an agreement to convey not only an unencumbered and indefeasible estate, but such an estate in fee simple."

In Burwell v. Jackson, 9 N. Y. 537, it was held that a purchaser is never bound to accept a defective title, unless he expressly stipulates to take such title knowing its defects.

In the opinion in that case the court cited with approval the opinion in the case of Purvis v. Rayer, 9 Price, 488, which was to the same effect, and the latter case was also cited with approval in Green v. Chandler, 25 Tex. on page 157.

The following definition is taken from the Standard Dictionary:

"Valid, a. 1. Strong; powerful; efficient. 2 Founded on truth or facts; capable of being justified, supported, or defended; not weak or defective; well-grounded; sound; good; as, a valid argument; a valid objection. 3 Specif.; Law. Having legal strength or force; executed with the proper formalities; legally sufficient or efficacious; incapable of being rightfully overthrown or set aside; as, a valid deed, covenant, title, marriage."

The plaintiff's contract was not merely that he would assign to the defendant oil and gas leases, but that he would assign "valid oil and gas leases." The words "valid oil and gas leases" have a definite legal meaning; and therein lies a distinction between this case and many of the authorities relied on by the appellant. Furthermore, those terms are definite and unambiguous; and it was not incumbent upon the defendant to introduce parol testimony to interpret their meaning. If it could be said that they are ambiguous, then it was conclusively proven by the testimony of the plaintiff as well as of the defendant that the parties to the contract construed them as having that meaning, since the plaintiff furnished to the defendant an abstract of title to the leases in which the latter was to have an interest, and endeavored to remove some of the objections to the title that had been pointed out by the defendant's attorney. It was also conclusively shown that the title offered to the defendant by the plaintiff was incumbered by a mortgage lien to secure more than $7,000 of indebtedness, which plaintiff failed to remove. For that reason the lease tendered by the plaintiff to the two tracts in which the defendant was to acquire an interest in consideration for the drilling were not valid oil and gas leases, within the meaning of the written contract. It would be unreasonable to construe the contract as meaning that defendant was required to drill the well at his expenses of $4,500, and to receive no consideration therefor, other than what was to be paid by Martin on his purchase letter, except a bare assignment of interest in the leases having the effect of a mere quitclaim deed, and which would be worthless by reason of a defective title, and which leases were the primary consideration for defendant's undertaking. And the evidence conclusively shows that defendant's refusal to drill was due solely to plaintiff's failure to show a valid title to those leases. Nor can the maxim "expressio unius est exclusio alterius," invoked by appellant as shown above, be given effect, since to do so would be to ignore and deny the legal effect of his obli-

gation to convey to defendant valid oil and gas leases.

It therefore appears that plaintiff failed to show a right of recovery independently of the contemporaneous parol agreement between the parties alleged by the defendant and found by the jury, and notwithstanding the other findings of the jury shown in the verdict, even though the act of the plaintiff in inducing H. H. Martin to offer to the defendant the payment of $2,500, as a consideration for drilling the well, was sufficient to discharge plaintiff's obligation to furnish Martin proper assurances of title to the lease owned by the latter, and by reason of which ownership he offered to pay the defendant the sum so named for the purpose of showing probability of discovery of oil on that lease.

For the reasons so stated, the court could properly have instructed the jury to find that plaintiff had not discharged the burden of showing that he had complied with his obligations stipulated in the written contract, and that therefore he was not entitled to the relief prayed for in his petition.

Accordingly, all assignments of error are overruled, and the judgment of the trial court is affirmed.