## RAY v. BLUE.
### No. 2382.

Court of Civil Appeals of Texas. Eastland.

June 18, 1943.

Rehearing Denied July 16, 1943.

Hilda Blair Ray, of Midland, for appellant.

W. O. Gross, of Mineral Wells, for appellee.

GRISSOM, Justice.

This is a suit by Hilda Blair Ray to compel performance of an alleged contract for the conveyance by J. F. Blue to Mrs. Ray of an interest in the minerals in a section of land. Plaintiff alleged that about the 11th day of April, 1942, she entered into a written contract with defendant, whereby she agreed to purchase and Blue agreed to sell to her 1/8th of the mineral in a section of land for $15 per acre. Plaintiff alleged that between the 11th and 15th days of April, 1942, she "tendered to the Defendant directly and through the First National Bank of Gordon, Texas", the agreed purchase price for said acreage, and that Blue refused to accept the purchase money and to make the conveyance; that since April 11, 1942, she has been ready, able and willing to pay the agreed purchase price and perform her part of the contract. Plaintiff prayed that Blue be required to convey to her one-eighth of the minerals in a certain section, "or so much thereof as it is found that said Defendant owned on or subsequent to said April 11, 1942, * * *."

Blue answered by general denial. He also specially denied there was any contract between plaintiff and defendant; that there was no meeting of the minds of said parties. Defendant alleged that the correspondence between the parties constituted mere negotiations that did not result in a contract; that there was never an unconditional acceptance of any offer, if an offer was made; that the section in question contained 654.1 acres; that said land was under an oil and gas lease to Shell Oil Company; that on April 13th, before any agreement was ever consummated, defendant withdrew the of-

fer, theretofore made, if an offer had been made by him, which he denied.

By supplemental petition plaintiff alleged that defendant had no title to a certain 65-acre tract in the section in question. Trial was to the Court. Judgment was rendered for defendant. Plaintiff has appealed.

The following constitute all the communications and negotiations between the parties.

(1)

"Hilda Blair Ray
"Lawyer
"First National Bank Building
"Midland, Texas
"March 16, 1942
"In re: Sec. 15, Sur. 46 1–S
"Winkler-Ector County, Tex.
"Mr. J. F. Blue
"Gordon, Texas
"Dear Sir:
"I am interested in purchasing some mineral acreage in the above vicinity. If you have any for sale, will you be kind enough to let me know, stating the number of acres, the area covered, and the price. I am enclosing an addressed stamped envelope for your convenience.
"Yours very truly,
"Hilda Blair Ray"

(2)
"3–18–42
"Gordon Tex
"Mrs. Hilda Blair
"Midland, Tex
"In regard to your inquire I will say have some to sell But cant say how much at present. of course it would depend on Price. per acre
"Will have to make trip out there in the near future. to tend to some Business.
"Very Respt
"J. F. Blue
"P. S. You might state what you would Give per acre"

(3)
"March 28, 1942
"Mr. J. F. Blue,
"Gordon, Texas.
"Dear Mr. Blue:
"Thank you for your letter of recent date in reference to mineral acreage in 15 46–1S Ector-Winkler County. There does not seem to have been any sales in there for several years and the highest was $15.00 an acre then. I would like to get about an eighth interest in there and could pay $15.00 per acre for that much. I am buying some acreage in various places, and I would therefore like to know if you are interested, as I may find some other acreage which would be cheaper. If you can sell me some, please state how many acres. Does your interest cover the entire Section 15? Do you have an abstract which you could loan me for examination?

"I enclose a stamped envelope for your convenience.
"Yours very truly,
"Hilda Blair Ray"

(4)
"April 7, 1942
"Mr. J. F. Blue,
"Gordon, Texas
"Dear Sir:
"I wrote to you on March 28, in answer to your letter, making you an offer on some mineral acreage in 15 46–1S Ector and Winkler Counties, and enclosing a stamped envelope for your reply. Would you please let me know what you decided in reference to selling your acreage.
"Yours very truly,"

(5)
"Mrs. Hilda Blair
"Received this letter sometime ago. Will say would sell at that price The abstract is OK up to date and there in Midland Could let you have the amount you want.
"Very Resp
"J. F. Blue
"P. S. Thanks for the offer."

(6)
"April 11, 1942
"Mr. J. F. Blue,
"Gordon, Texas
"Dear Mr. Blue:
"I have your letter in answer to mine of March 28, 1942, in which I offered to buy 1/8 interest in the oil, gas, and minerals of all of section 15 46–1S Ector-Winkler Counties for $15 per acre, in which letter you state that you have that amount and that you will sell at that price.

"I enclose herewith my check to your order for $50 as earnest money on said purchase and I enclose herewith mineral deed covering said 1/8 interest in all of section 15, in which deed I have made John D. Bleecker grantee. I will let you know if I need the abstract, as it may not be necessary. You and Mrs. Blue should sign this deed before a notary, and should forward it to the First National Bank here with a draft drawn on Mr. John D. Bleecker for $1150, which will be paid immediately

unless I find some correction to be made in the title. Will you please authorize the bank to give me ten days as that should give me enough time to check the title. It will be necessary to attach $1.65 in revenue stamps to the deed. I would suggest you authorize the bank here to deduct that amount from the $1150.

"You state in your letter that you have as much as 80 mineral acres in this section. I had seen an abstract on this property and I thought your interest was less than that. I thought your interest was 1/14, which would be only 45 acres. You got 1/7 from your mother and father and sold 1/14 to Wilbar. You had purchased 1/7 from R. H. but deeded that back to him. If this is correct, you do not have as much acreage as I would like to buy, but I am wondering if you have gotten some from some other member of the family. I offered Mrs. Ince $15 an acre if she would sell some, but I have not heard from her. I have a letter from Mrs. Maggie Blue but I do not understand whether she would be willing to sell some or not. I enclose a stamped envelope and would appreciate it if you would answer me by return mail in reference to the number of acres. If you have 80 acres to sell then I do not want to buy any more from any of the others, but if you do not, then I would like to get a total of 80 acres.

"Yours very truly,"

(The check mentioned was on a Midland bank. On its margin it recited that it was "earnest money and down payment" on an undivided 1/8 of the minerals in section 15 and was for John D. Bleecker's account. The mineral deed recited that for a consideration of $10 paid by Bleecker, the grantee, Blue and his wife conveyed to Bleecker an undivided 1/8 interest in the minerals in section 15, with further description of the section, and that it was "intended to convey eighty (80) mineral acres over all of said section." It recited that said land was under an oil and gas lease to Shell Oil Company; that the sale was subject to the terms of said lease. It further recited that the conveyance to Bleecker included 1/8 of all oil royalty and gas rental to be paid under the terms of said lease and 1/8 of the money rentals to be paid to extend the term and that if the lease to Shell Oil Company were cancelled or forfeited Bleecker should own 1/8 of all oil, gas and other minerals in said land, together with a like 1/8 interest in all bonuses paid, and all royalties and rentals provided for in future mineral leases on said section.)

(7)                          "4-13-1942
                          "Gordon, Tex

"Hilda Blair
"Midland, Tex.
    "Received your letter today Will say, that I am sorry you read my letter wrong. I own a 1/14 and controll another 1/7 in that Sction 46. So I have Royalt all right but none at that price.
    "Thanks for the offer. Just the same Will close with best wishes.
        "Very Respt.
                          "J. F. Blue   (over)""

Reverse side of sheet: "You will find enclosed your check, deed."

(8)                          "April 14, 1942
"Mr. J. F. Blue,
    "Gordon, Texas.
"Dear Mr. Blue:
    "I have your letter of April 13, 1942, and in answer will state that I did not read your letter wrong. I have before me the original of my letter to you of March 28, 1942, in which I stated I wanted to get a 1/8 interest in the minerals under section 15 46-1S Ector-Winkler Counties, and could pay $15 per acre for that much, asking if you could sell me some and if so how many acres, whether your interest covered the entire section 15, and did you have an abstract which you could loan me for examination. In response to this letter, you stated,
    " 'will say would sell at that price the abstract is O.K. up to date and there in Midland  Could let you have the amount you want' This was written on the bottom of the letter. This letter you mailed at Gordon, Texas, April 10, 1942, 6:00 a.m., and I received it Saturday morning April 11, in response to which on the same day I accepted your offer, forwarded you a deed to a grantee nominated by me, John D. Bleecker, covering a 1/8 interest in the oil, gas, and minerals under all of section 15 46-1S, enclosed a $50 earnest money check to your order drawn on the First National Bank of Midland, Texas, and authorized you to draw a draft on said bank against my said nominee for the balance of purchase price $1150, to be paid immediately upon receipt from you of good title to said 1/8 interest. This letter was posted in Midland, Texas on Saturday afternoon, April 11, and received by you before your letter to me of April 13.

"I am entitled to hold you to your offer, as it was accepted, and I turned back other acreage after that time which I could have purchased. I have today sent to the First National Bank of Gordon, Texas, the deed and the balance of the purchase money on this contract in the sum of $1150, authorizing said bank to remit the money to you upon proper execution by you and your wife of the deed on this property. I am therefore returning to you the earnest money and hereby require that you comply with the contract in accordance with the terms agreed upon.

"In your letter you state that you control another 1/7 in addition to the 1/14 which already stands of record in your name. It will, of course, be necessary for you to perfect the title to this other 1/7 in yourself. It will also be necessary that you send me an authorization to get the abstract which you state is here in Midland, and is brought down to date. I enclose a copy of the letter of transmittal which I have today forwarded to the bank.

"Yours very truly,
                    "Hilda Blair Ray"

(9)                         "4-15-42.
                            "Gordon Tex.
"Hilda Blair Ray.

"I told you that I could sell you some Roylt But not at your price. I never had a thought of selling you that Royalt at $15.00 per acre—of course I wanted to ans. your letter through curticese but nothing els.

"There has been no Agreement in the least.

    "Very Respt
                        "J. F. Blue"

(10)                    "April 14, 1942
"First National Bank
    "Gordon, Texas
"Gentlemen:

"I enclose herewith a mineral deed from J. F. Blue and wife, to my nominee, John D. Bleecker, covering a 1/8 interest in the oil, gas, and minerals under section 15, Block 46–1S T & P R. survey, Ector-Winkler counties, Texas, which I have agreed to buy from Mr. Blue at $15 per acre, $50 of which purchase price has been forwarded to him. I also enclose herewith my check drawn to his order on the First National Bank of Midland, Texas, for $1150.00 the balance of the purchase price for 80 mineral acres at said $15 per acre.

"I have asked Mr. Blue to execute said deed in compliance with his agreement to sell. When he and his wife have properly executed said deed, you are authorized to put this check through for collection, and to forward said deed to the First National Bank of Midland, Texas. The check will be honored when the deed has been received by the bank here and I have ascertained from the record that Mr. Blue has good right and title to convey said 1/8 interest.

"Will you be kind enough to acknowledge receipt of these papers on the carbon copy of the letter enclosed? If you prefer to handle the matter by draft rather than my personal check that will be satisfactory, as either will be paid immediately upon his complying with his contract.

"Yours very truly,
                    "Hilda Blair Ray"

On April 15th the Gordon bank returned the instruments sent it by plaintiff with the notation at the bottom of a carbon copy of the foregoing letter, "Mr. Blue states that he does not want to sell at this price. Cashier."

It is undisputed that defendant did not own 1/8th of the minerals in any part of said section. The undisputed evidence shows, and the court found, that defendant owned an undivided 1/14th interest in the Northeast 1/4th of said section, which contained 163.4 acres; that defendant owned none of the minerals in a 65 acre tract in said section; that he owned a 1/14th interest in a certain 130-acre tract therein, and that defendant owned a 25.77/295.7 acres out of another tract in said section. When Mrs. Ray prepared and sent the $50 check and the mineral deed to Blue she knew that Blue by executing the instrument could not then convey to her what she claims to have bought, to wit, a 1/8 interest in the minerals in all of section 15. Other parties had offered to sell her the minerals in a 65-acre tract in said section before negotiations with Blue were started and she then examined the records of an abstract plant and learned that Blue owned some of the minerals in some parts of said section. She knew Blue did not own the 80 mineral acres recited in the deed. The tender of the check and deed was merely an effort to bind a deal that defendant had not agreed to. Said section contained 654.1 acres. Further findings of fact and conclusions of law were as follows:

"I find as a fact that the defendant never intended that the correspondence above set

out should constitute a contract of purchase or sale, and that he knew at all times that a number of details would have to be agreed upon before any contract could be made or trade consummated, and that he did not agree to furnish an abstract as a condition precedent to the consummation of a sale, nor to furnish title which purchaser would accept without correction, nor to give ten days for examination of title, nor to consummate any trade at Midland, Texas.

"I find that he never consented to or acquiesced in the terms, provisions and conditions set out in the letter from plaintiff to defendant of date April 11, 1942.

"I find that Shell Oil Company had an oil and gas lease on said land and was preparing to drill a well thereon and that such was known to plaintiff March 16, 1942, and that such well was being drilled at the date of the trial of this case.

"I further find that the plaintiff had seen an abstract to Section 15 and had investigated the title and believed, during all of the negotiation, that the defendant did not own as much as an undivided 1/8th interest, but that she believed that other interests were owned by his sisters and brothers.

## "Conclusions of Law

\*    \*    \*    \*    \*    \*

"1. That the negotiations between the parties were only treaty and that they were incomplete, that the minds of the parties never met on the essential terms of a contract, and that the correspondence and negotiations did not amount to a contract.

"2. That time is of the essence of contracts for the sale of mineral interests in land, and that there is no implied obligation on the part of a seller of a mineral interest to furnish an abstract of title, nor to allow ten days for examination of title, nor to furnish title which purchaser would accept without correction, nor to draw draft with deed attached through bank in some city other than that of the home of seller.

"3. That the letter of date April 11, 1942, written by plaintiff to defendant, amounted to a rejection of any prior offers made by defendant, and that the negotiations were in effect terminated by the letter written by defendant under date of April 13, 1942.

"4. That no legal tender and no unqualified, unconditional acceptance of any proposition made by either party was ever made by the other.

"5. That there is no contract enforceable in law, or which the Court should order specifically performed, binding defendant to convey any interest in the land in controversy.

"6. That plaintiff has failed to discharge the burden of proof and has failed to make a case, and that defendant is entitled to judgment."

Plaintiff contends that the evidence shows as a matter of law a concluded contract for the sale by Blue to her of 1/8th of the minerals in the section, and that she is entitled to a judgment compelling Blue to specifically perform said contract by conveying said mineral interest, or, at least, such mineral interest as the evidence shows Blue actually owns. Stated more specifically, it is plaintiff's contention that her letters numbers 3 and 4, written by her on March 28th and April 7th, constitute an offer by plaintiff to purchase from defendant a 1/8th interest in the minerals in all of said section 15 at $15 per acre, and that Blue's letter number 5, written by Blue on the bottom of plaintiff's letter No. 3, dated March 28, 1942, and apparently written by defendant about April 9th, is as a matter of law an acceptance of plaintiff's offer aforesaid.

▆▆▆ In plaintiff's second point, she assigns as error the court's implied finding that letter No. 5, written by Blue on the bottom of plaintiff's letter No. 3, was an offer by the defendant. The Court found that if defendant's said letter constituted an offer, that said offer was rejected by plaintiff by the qualifications and conditions contained in her letter number 6, dated April 11th. Plaintiff's letter number 3, dated March 28th, does contain the statement: "I would like to get about an eighth interest in there and could pay $15.00 per acre for that much." That letter contains also the following: "If you can sell me some, please state how many acres. Does your interest cover the entire section 15? Do you have an abstract which you could loan me for examination?" This letter number 3 was not promptly answered by defendant, and on April 7th plaintiff again wrote the defendant. In said letter, number 4, she stated she had written Mr. Blue on March 28th, making him an "offer on some mineral acreage in 15 \* \* \*", and asking Blue to advise her what he had decided in reference to selling his acreage. We are of the opinion that plaintiff's letter number 3, dated March 28th, did not

constitute an offer to buy 1/8th of the minerals in all of section 15 at $15 per acre. Defendant did not own 1/8th of the minerals in any part of said section. In a part of the section he had no interest in the minerals and plaintiff was informed of this fact before these negotiations started. Prior to writing said letters, plaintiff had investigated the records of an abstract company with reference to said ownership and did not believe that defendant owned a 1/8th interest in the minerals in any part of said section. She did not in letter 3, regardless of her later interpretation thereof, make a definite offer which, if it had been accepted, would have bound her to to purchase 1/8th of the minerals in the entire section at $15 per acre. Her letters 3 and 4 are susceptible of the interpretation that she was interested in purchasing the royalty, or a 1/8th interest in the minerals, in some acreage in section 15, and that she "could" pay $15 per acre for as many acres as might thereafter be agreed upon between the parties. Plaintiff's letters of March 28th and April 7th, numbers 3 and 4, constituted mere treaty and negotiation. They did not constitute a definite, firm offer by the plaintiff to purchase 1/8th of the minerals in the entire section at $15 per acre. It would be strange indeed for plaintiff to make defendant an offer for a 1/8th interest in the entire section when he did not own such an interest in the entire section and she did not believe that he did and plaintiff knew that defendant owned no interest in a 65 acre tract within this section. The statement in plaintiff's letter of March 28th, that she "would like to get about an eighth interest in there", we think, had reference to the quantity of mineral interest per acre, to wit, 1/8th, that she "could" pay $15 for and not to a 1/8th interest in all of the section. Plaintiff's letters 3 and 4 were merely treaty and inquiry as to whether his interest covered the entire section; how many acres he would be willing to sell, and suggested to defendant that plaintiff might buy some acreage in section 15 and pay $15 per acre for a 1/8th mineral interest. This interpretation disposes of plaintiff's contention. The law applicable to this proposition is stated by Judge Harvey in Central State Bank v. Godfrey, Tex.Com.App., 29 S.W.2d 1015, 1018, as follows: "In order to say that this series of letters shows a concluded contract, the letters must be taken together and construed as an integral whole, and the result must show that the point was reached in the negotiations where the parties understood each other and that the terms proposed by one were acceded to by the other. Patton v. Rucker, 29 Tex. 402; Summers v. Mills, 21 Tex. 77."

See also Summers v. Mills, 21 Tex. 77, 88; Foster v. New York & Texas Land Co., 2 Tex.Civ.App. 505, 22 S.W. 260, 264, writ refused; Liquid Dispatch Line v. Texas Power & Light Co., Tex.Civ.App., 6 S.W.2d 169, writ refused; Brillhart v. Beever, Tex.Civ.App., 198 S.W. 973, 975; Kolp v. Maco Oil Co., Tex.Civ.App., 57 S.W.2d 583; Godfrey v. Central State Bank, Tex.Civ.App., 5 S.W.2d 529; 38 Tex.Jur. 765.

■ If plaintiff's brief should be construed as presenting an alternative contention that defendant's letter No. 5, written apparently about April 9th on the bottom of plaintiff's letter number 3, is an offer by defendant to sell plaintiff a 1/8th mineral interest in as many acres as plaintiff wanted at $15 per acre, then we agree with the trial court that such offer was never unconditionally accepted by the plaintiff until after said offer, if it should be so construed, was withdrawn by defendant on April 13th. Considering defendant's letter number 5 as an offer and plaintiff's letter number 6, dated April 11th, as an acceptance, we think it is evident that plaintiff's letter number 6 is not an unqualified, unconditional acceptance of said offer, but a rejection and counter offer, not accepted by defendant. Plaintiff did not before defendant's offer was withdrawn tender payment of the purchase price at Gordon, Texas. On the contrary, plaintiff insisted that Mr. Blue have his wife join him in executing the mineral deed and forward the deed to a bank at Midland with a draft drawn on her nominee, Bleecker, for the purchase price. She agreed that upon receipt of the deed at Midland, the purchase price would be immediately paid, unless she found some correction to be made in the title. Defendant had not offered to do these things. Plaintiff's acceptance was conditioned upon Blue sending the deed to a bank at Midland and making the Midland bank his agent for collection of the purchase money. It is unnecessary to decide whether the acceptance of plaintiff's assumed offer was further conditioned and qualified.

The Court found that when plaintiff began the negotiations on March 16, 1942, the Shell Oil Company then had a lease on section 13 and was preparing to drill an oil well thereon, and that this was known to plaintiff. We conclude that all the circumstances in evidence are sufficient to support this finding. Under these circumstances it would appear that immediate action with reference to acceptance of title, and payment of the purchase price was required. Plaintiff had not offered to give ten days time for examination of an abstract, nor to send the deed to Midland with a draft on Bleecker. Plaintiff's requirement that defendant send the deed to the First National Bank at Midland with a draft drawn on Bleecker for the purchase price, with the agreement that the draft would be promptly paid there unless plaintiff found need for some correction in the title, and a requirement of ten days for an examination of the abstract were outside of and in addition to the terms of defendant's offer. She could not accept such offer and require defendant to send his deed to the Midland Bank and make such Bank his agent for collection of the draft. In plaintiff's letter to the Gordon bank she makes it very plain that the purchase price would not be paid until Blue's deed was received at Midland by the Midland bank selected by her and plaintiff ascertained Blue had title to a 1/8th interest in the mineral in said section. Defendant did not have title to a 1/8th interest in any part of section 15; defendant did not own any interest in a part of said section and plaintiff knew it. Theretofore plaintiff had required that a draft for the purchase money be drawn on Bleecker at a Midland bank and be sent with defendant's deed to Midland. Such requirement alone constituted a rejection of defendant's offer and defeated her right to enforce specific performance of the alleged contract, if it otherwise existed. Scott v. Grant, 37 Tex. Civ.App. 169, 84 S.W. 265, 266, writ refused; Langford v. Bivens, Tex.Civ.App., 225 S.W. 867, 870, writ dismissed.

In Patton v. Rucker, 29 Tex. 402, 409, our Supreme Court said: "An acceptance of a proposal to sell, in order to bind the maker of the proposition and conclude the contract, must be unconditional and unqualified. The exact terms of the proposition, without addition or variation, must be acceded to before the proposition is withdrawn; otherwise, the maker of the proposition is not bound by the acceptance."

See also 10 Tex.Jur. 43; Moore Bros. v. Kirkpatrick, 172 S.W.2d 135, decision by this Court April 23, 1943.

We have considered all of plaintiff's points. We are of the opinion that the correct judgment was rendered. The judgment is affirmed.