TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00573-CR






Luis Felipe Rodriguez, Jr., Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY 


NO. 0793273, HONORABLE SHERRY L. HILL, JUDGE PRESIDING







 Appellant Luis Felipe Rodriguez, Jr. appeals his conviction for operating a motor
vehicle while intoxicated, misdemeanor repetition. See Tex. Pen. Code Ann. §§ 49.04, .09(a) (West
Supp. 2002). (1) The jury found appellant guilty and the trial court assessed his punishment at forty-five days' confinement in the county jail and a fine of $1,000.


Point of Error


 Appellant advances a sole complaint on appeal. He contends that the trial court erred
in including in the jury charge, over objection, a portion of the Geesa v. State, 820 S.W.2d 154 (Tex.
Crim. App. 1991), definition of reasonable doubt when that portion of Geesa had been overruled by
Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000). We will affirm the trial court's judgment.

Information


 The information alleged that appellant on or about January 2, 2001, operated a motor
vehicle while intoxicated in a public place while "not having the normal use of his mental and
physical faculties by reason of the introduction of alcohol into his body." The enhancement
paragraph alleged a prior misdemeanor conviction for operating a motor vehicle while intoxicated
in Bexar County on April 3, 2000.


Facts

 Neither the legal nor factual sufficiency of the evidence is challenged. Briefly, the
facts show that in the early morning hours of January 2, 2001, Brian Brindley, a firefighter EMT, was
on his way home from work. A silver BMW automobile being driven erratically on Interstate 20 in
Tarrant County, almost ran Brindley's vehicle off the road. Another minivan was forced off the
road. Brindley followed the BMW while calling 911 on his cell phone to report a possible
intoxicated driver. Brindley observed the BMW being driven erratically from one lane to another
and varying its speed from eighty miles per hour to twenty miles per hour. After following the car
for ten miles, Brindley saw the BMW stop on the shoulder of the road. Brindley stopped,
approached the BMW, and opened the car door. Appellant was behind the wheel and was alone. 
Appellant denied driving erratically or drinking alcohol. Appellant's speech was slurred, and he
thought he was still in Plano. Based on his EMT experience, Brindley did not observe anything
medically wrong with appellant.

 Chris Bardwell, an off-duty Grand Prairie police officer, saw Brindley following the
BMW, which was weaving in and out of its lane of traffic and varying its speed. Bardwell also
notified several police dispatchers of a possible intoxicated driver. Bardwell stopped and parked
behind Brindley.

 Arlington Police Officer Christopher Caballos arrived on the scene where appellant,
Brindley, and Bardwell were parked. When appellant got out of the BMW, he swayed, was unsteady
on his feet, had the smell of an alcoholic beverage on his breath, and had bloodshot eyes. Appellant
failed all three field sobriety tests that he was asked to perform. In Officer Caballos's opinion,
appellant was intoxicated. He was arrested.

 A videotape was taken of appellant at the Arlington city jail approximately thirty
minutes after his arrest. The videotape was introduced at trial. On cross-examination, Caballos
testified that appellant was required to place his feet in certain designated footprints for the purpose
of the tape. The record reflects:


Q. Okay. And his feet are close together. And the jury can see that he is not
swaying at all on those lines, right?


A. He does pretty good, yes, sir. 


 Appellant claims that the evidence shows a conflict as to whether he was intoxicated
while operating the BMW. At the close of the guilt/innocence stage of the trial, the trial court
included in its jury charge the following:


All persons are presumed to be innocent and no person may be convicted of an
offense unless each element of the offense is proved beyond a reasonable doubt. The
fact that a person has been arrested, confined, or otherwise charged with the offense,
gives rise to no inference of guilt at his trial. The law does not require the defendant
to prove his innocence or produce any evidence at all. The presumption of innocence
alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a
reasonable doubt of the defendant's guilt after careful and impartial consideration of
all the evidence in the case.


The prosecution has the burden of proving the defendant guilty and it must do so by
proving each and every element of the offense charged beyond a reasonable doubt
and if it fails to do so, you must acquit the defendant.


It is not required that the prosecution prove guilt beyond all possible doubt; it
is required that the prosecution's proof excludes all "reasonable doubt"
concerning the defendant's guilt.


In the event that you have a reasonable doubt as to the defendant's guilt after
considering all the evidence before you, and these instructions, you will acquit the
defendant and say by your verdict "not guilty."



(Emphasis added)

 Appellant expressly objected to the giving of the third paragraph above in bold print. 
The trial court was told that the objected-to paragraph had been a part of the Geesa definition of
reasonable doubt and that Geesa in this regard had been overruled by Paulson. Appellant's objection
was overruled. 


Discussion


 "Despite its early use in American jurisprudence, the phrase 'reasonable doubt'
appears in neither our federal nor state constitutions." Paulson v. State, 991 S.W.2d 907, 911 (Tex.
App.--Houston [14th Dist.] 1999), rev'd on other grounds, Paulson, 28 S.W.2d 570; see also In re
Winship, 397 U.S. 358, 377 (1970) (Black, J., dissenting).

 We know, of course, that the due process clause of the Fourteenth Amendment to the
United States Constitution protects an accused against conviction except upon proof beyond a
reasonable doubt of every fact necessary to constitute the crime with which he is charged. Winship,
397 U.S. at 364. Although the "beyond a reasonable doubt" standard is a requirement of due
process, the federal constitution neither prohibits trial courts from defining reasonable doubt nor
requires them to do so as a matter of course. Victor v. Nebraska, 511 U.S. 1, 5 (1994). Moreover,
the United States Constitution does not require that any particular form of words be used in advising
the jury of the prosecution's burden of proof. Rather, the jury instructions taken as a whole must
correctly convey the concept of reasonable doubt to the jury. Id. (2) 

 Article 2.01 of the Texas Penal Code provides:


 All persons are presumed to be innocent and no person may be convicted of an
offense unless each element of the offense is proved beyond a reasonable doubt. The
fact that he has been arrested, confined, or indicted for, or otherwise charged with,
the offense gives rise to no inference of guilt at his trial.



Tex. Pen. Code Ann. § 2.01 (West 1994). The identical language is found in the Code of Criminal
Procedure. See Tex. Code Crim. Proc. Ann. art. 38.03 (West Supp. 2002). Despite different
language in the past, these statutes and their forerunners (3) have been substantially the same. See
Aston v. State, 656 S.W.2d 453, 456-58 (Tex. Crim. App. 1983). Neither section 2.01 nor article
38.03 define "reasonable doubt" for the purpose of the statute or for either code nor did their
statutory forerunners do so. In the absence of special definitions, statutory language can be measured
by common understanding and practices or construed in the sense generally understood. See Ex
parte Anderson, 902 S.W.2d 695, 699 (Tex. App.--Austin 1995, pet. ref'd). Statutory words are to
be read in context and construed according to the rules of grammar and common usage. See Tex.
Gov't Code Ann. § 311.011(a) (West 1998). Words and phrases that have acquired a technical or
particular meaning by legislative definition or otherwise shall be construed accordingly. See Tex.
Gov't Code Ann. § 311.011(b) (West 1998). (4)

 Long prior to Winship, a criminal defendant in Texas was entitled by statute to a jury
charge on proof of guilt beyond a reasonable doubt. McCracken v. State, 330 S.W.2d 613, 614 (Tex.
Crim. App. 1960), held that a defendant was deprived of "a valuable right conferred by statute"
when the jury charge failed to apply the law of reasonable doubt in submitting the case to the jury
despite a special requested charge. The cause was reversed. (5)

 Although a criminal defendant is entitled by statute to have the law of reasonable
doubt applied in the jury charge or instructions, he was not always entitled to have the term defined. 
See Pigg v. State, 287 S.W.2d 673, 674 (Tex. Crim. App. 1956). "The charge on reasonable doubt
should be given in the language of the statute; attempts to amplify it, explain it or belittle it almost
invariably lead to a reversal." 1 A. R. Stout, Branch's Anno. Penal Code §16 (2d ed. 1956)
(citations omitted); see also Whitson v. State, 495 S.W.2d 944, 946 (Tex. Crim. App. 1973).

 Prior to the 1991 decision in Geesa and for well over a century, Texas trial courts
normally did not define "reasonable doubt" in jury charges. See McGinty v. State, 723 S.W.2d 179,
721 (Tex. Crim. App. 1986). This is not to say from time to time there were not definitions of
"reasonable doubt" submitted to juries, but these were not usually approved. See generally Craig
Hemmens et al., "Doubt Over Reasonable Doubt In Texas," 59 Tex. Bar. J. 130 (Feb. 1996). In
Abram v. State, 35 S.W. 389, 390 (Tex. Crim. App. 1896), the trial court gave a definition of
reasonable doubt which included the phrase that "[t]he mere possibility that the defendant may be
innocent will not warrant an acquittal upon the ground of reasonable doubt." The court reversed the
conviction pointing out that the trial court had done "its whole duty" if it charged the jury in the
language of the statute on reasonable doubt. The court added, "It is not proper for the court to
discuss what the reasonable doubt is . . . . The jury is as competent to determine that as the court." 
Id. at 390; see also Marshall v. State, 175 S.W. 154, 155 (Tex. Crim. App. 1915). And it was
frequently held that it was not error for the trial court to refuse to define "proof beyond a reasonable
doubt" even when a request was made. See Marquez v. State, 725 S.W.2d 217, 241 (Tex. Crim.
App. 1987).

The Geesa Decision


 On November 6, 1991, however, the Court of Criminal Appeals in Geesa adopted a
definition of proof beyond a reasonable doubt (6) and required that it be given "in all criminal cases,
even in the absence of an objection or request by the State or the defendant, whether the evidence
be circumstantial or direct." Geesa, 820 S.W.2d at 162. In Reyes v. State, 938 S.W.2d 718, 720-21
(Tex. Crim. App. 1996), the Court held that the above described holding in Geesa created an
"absolute systemic requirement" that cannot be waived or forfeited or be subject to a harm analysis
in a case where the Geesa definition was totally omitted. (7)


The Paulson Decision


 In Paulson, the defendant was charged with misdemeanor theft of a wheeled barbeque
pit. The trial court instructed the jury that the proof of guilt was the State's burden "beyond a
reasonable doubt" but totally omitted the Geesa definition. There was no objection. On appeal, the
Fourteenth Court of Appeals on the basis of Geesa and Reyes dutifully but reluctantly found
automatic reversible error." Paulson v. State, 991 S.W.2d 907, 917 (Tex. App.--Houston [14th
Dist.] 1999), rev'd, 28 S.W.3d 870 (Tex. Crim. App. 2000). (8)

 Petition for discretionary review was granted in Paulson, and the Court of Criminal
Appeals overruled Reyes in its entirety and overruled Geesa insofar as that decision required trial
courts to instruct juries on the mandated definition of "reasonable doubt." Paulson, 28 S.W.3d at
573.

 The Paulson court wrote:

 Our decision in Geesa requiring trial courts to instruct juries on the definition
of reasonable doubt was poorly reasoned.


* * *


 If a conscientious juror reads the Geesa charge and followed it literally he or she
will never convict anyone.


* * *


 It is ill-advised for us to require trial courts to provide the jury with a redundant,
confusing, and logically-flawed definition when the Constitution does not require it,
no Texas statute mandates it, and over a hundred years of pre-Geesa precedent
discourages it.



Id. at 572-73. The Paulson opinion further added:



 We find that the better practice is to give no definition of reasonable doubt at all
to the jury. On the other hand, if both the State and the defense were to agree to give
the Geesa instruction to the jury, it would not constitute reversible error for the trial
court to acquiesce to their agreement.



Id. at 573.


 Paulson returned Texas law to its pre-Geesa condition-- "it is not error to refuse to
define reasonable doubt." 43 George E. Dix & Robert O. Dawson, Texas Practice: Criminal
Practice and Procedure § 36.34 (2d ed. Supp. 2002).

 The "better practice" language is a word to the wise. Like the pre-Geesa law, it
discourages any definition of "reasonable doubt" being given but encourages the issue be submitted
to the jury in the language of the statute. The "better practice" language leaves the impression of a
"less than better practice," including a definition of "reasonable doubt" that would pass muster. The
Paulson court was obviously indicating it was not going to the opposite extreme of the Geesa and
Reyes cases.

 This indication is reinforced by the second sentence in the quotation above although
the wording of the sentence is somewhat confusing. It seems to say that reversible error will not
result if the discredited Geesa definition is submitted after both parties agree and the trial court
approves. The lack of reversible error may well turn on the appealing party's agreement to submit
the Geesa definition constituting a waiver of any complaint on appeal. It is not likely that the Geesa
definition will be given too frequently in view of its nature and the requirements imposed. 
Prosecutors will not be inclined to agree to give a definition that is redundant, confusing, logically
flawed, and which if read literally would cause conscientious jurors to acquit. Trial courts will be
reluctant to put a seal of approval on such agreements. 


Phillips v. State Before applying Paulson to the instant case, we observe its application in a recent
case with some similar features to our case. See Phillips v. State, 72 S.W.3d 719 (Tex. App.--Waco
2002, no pet.). In Phillips, the trial court gave only a portion of the Geesa definition:


 It is not required that the prosecution prove guilt beyond all doubt. It is
required that the prosecution's proof exclude all reasonable doubt concerning the
defendant's guilt. (9)



Id. at 721. The defendant objected only to the first sentence. Id. The Phillips opinion does not state,
but we shall assume for our discussion, that reasonable doubt was also submitted to the jury in the
language of the statutes. Likewise, the opinion does not state the date of the trial so we are unable
to assay any retroactive issue. When Paulson overruled Geesa, it did not address the retroactivity
of its decision (10) as Geesa did in 820 S.W.2d at 165.

 Under any circumstances, the Waco Court of Appeals applied Paulson. The court
found that "[b]ecause the Court of Criminal Appeals was clear on the point - give it all if the parties
agree or give none of it - we hold that it was error to give part of the Geesa instruction in the absence
of an agreement." The Phillips court determined, however, that the error was harmless. Id.

 The instant cause was tried after the Paulson decision. The retroactivity issue is not
involved. Cases such as Bordman v. State, 56 S.W.3d 63 (Tex. App.--Houston [14th Dist.] 2001,
pet. ref'd), and Colbert v. State, 56 S.W.3d 857 (Tex. App.--Corpus Christi 2001, pet. granted), hold
that Paulson is to be applied to cases pending on appeal at the time of that decision. See also State
v. Arroya, 32 S.W.3d 868 (Tex. Crim. App. 2000). These cases are little or no assistance to our
discussion. Cf. Dix, § 36.34.


Paulson and the Instant Case


 In the instant case, the trial court, as earlier noted, charged on the presumption of
innocence and the required proof of each element of the offense beyond a reasonable doubt in the
language of section 2.01 of the Penal Code and article 38.03 of the Code of Criminal Procedure. The
trial court then added: "It is not required that the prosecution prove guilt beyond all possible
doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning
the defendant's guilt." This charge was part and parcel, the third paragraph, of the discredited
Geesa definition of reasonable doubt but not one of the three formulations contained therein. (11)

 On appeal, appellant relies on Paulson as he did in the trial court and contends that
none of the Geesa definition should have been given. The State does not dispute the Geesa
connection but urges that the instruction itself was not a definition of reasonable doubt. The first
sentence of the complained-of instruction has been commonly used in voir dire examinations of jury
panels, even in pre-Geesa times. It does, however, state what reasonable doubt is not, and in this
sense, is definitional. The second sentence is redundant in cases where the trial court has followed
the "better practice" and has submitted the issue of reasonable doubt in the language of the statutes
without a definition.

 We do not fully agree with the Waco Court of Appeals in Phillips that any extraction
from the Geesa definition is erroneous in the absence of an agreement, or it must be given that
Paulson has mandated that if the Geesa definition is to be given by agreement that all of the
definition had to be in entirety. Such an interpretation would forestall any acceptable version of a
reasonable doubt instruction from being submitted, in the absence of an agreement, if the instruction,
or any part thereof has a Geesa connection. We do not give Paulson such a strict construction. 
Nevertheless, attempts to define reasonable doubt do not usually make it clearer in the minds of the
jurors, often they tend to impermissively increase or lessen the burden of proof or utilize additional
terms which themselves require definition. See Paulson, 991 S.W.2d at 912. It has been said that
"any use of an instruction defining reasonable doubt presents a situation equivalent to playing with
fire." Id. (quoting United States v. Langer, 962 F.2d 592, 600 (7th Cir. 1992)).

 Although the complained-of instruction in the instant case does not appear to be too
intrusive upon the "better practice," we conclude that it should not have been given over objection.


Harmless Error


 Error in a jury charge, if timely objected to in the trial court, requires reversal if the
error resulted in some harm, i.e., if the error was calculated to injure the defendant's rights. See Tex.
Code Crim. Proc. Ann. art. 36.19 (West 1981); Abdnor v. State, 871 S.W.2d 726, 731-32 (Tex. Crim.
App. 1994); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

 The actual degree of harm "must be assayed in light of the entire jury charge, the state
of the evidence, including the contested issues and the weight of probative evidence, the argument
of counsel and any other relevant information revealed by the record of the trial as a whole." 
Saunders v. State, 817 S.W.2d 688, 690 (Tex. Crim. App. 1991) (quoting Almanza, 686 S.W.2d at
171). Appellant has the burden to show that he suffered some actual harm from the charge error, and
if he fails in this endeavor, the error will not require reversal. Abdnor, 871 S.W.2d at 732.

 The evidence was overwhelming that appellant was intoxicated while operating a
motor vehicle. The only bright spot for appellant was the arresting officer's acknowledgement that
the videotape taken some time later did not show appellant swaying at that time.

 During the voir dire examination of the jury panel, the trial court and each of the
parties explained that the State's burden of proof was beyond a reasonable doubt without a specific
definition of the term. Appellant's counsel further explained that the State's burden was a higher
burden than "by a preponderance of the evidence" or "by clear and convincing proof." Further, the
jury panel agreed with appellant's counsel that there should not be a lower standard in criminal cases
than beyond a reasonable doubt, and to be fair, jurors had to be "very sure" the State had proved its
case before conviction.

 In its jury charge, the trial court instructed the jury that the burden of proof was on
the State to prove guilt "beyond a reasonable doubt." The trial court, of course, also gave the
complained-of instruction. That charge, however, was never mentioned in jury argument. After an
examination of the entire record, we conclude that the error in the jury charge was not calculated to
injure appellant's rights.

 The sole point of error is overruled. The judgment is affirmed.



 __________________________________________

 John F. Onion, Jr., Justice

Before Justices Kidd, Patterson and Onion*

Affirmed

Filed: July 26, 2002

Publish























* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   These statutes refer to the offense as "operating" rather than "driving" while intoxicated. 
The word "driving" is no longer found in the body of the involved statutes.
2.   In only one case has the United States Supreme Court held that a definition of reasonable
doubt in jury instructions violated the due process clause. Cage v. Louisana, 498 U.S. 39, 41 (1990). 
There, the Court held that the particular instruction would have allowed the jury to base its verdict
on a degree of proof below that required by the due process clause. Id.
3.   The forerunners to section 2.01 are discussed in Paulson v. State, 991 S.W.2d 907, 911
(Tex. App.--Houston [14th Dist.] 1999), rev'd on other grounds, Paulson v. State, 28 S.W. 570
(Tex. Crim. App. 2000).
4.   The Texas Legislature has not defined the term "reasonable doubt" and it was not until
1991 that the Court of Criminal Appeals adopted a definition for the term. See Geesa v. State, 820
S.W.2d 154, 162 (Tex. Crim. App. 1991). Geesa's definition has now been overruled by Paulson
v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000).
5.   The statute mentioned in McCracken was article 705 of the 1925 Code of Criminal
Procedure, a forerunner of article 38.03.
6.   The Geesa definition of reasonable doubt required to be given in all jury charges and
instructions provided:


 All persons are presumed to be innocent and no person may be convicted of
an offense unless each element of the offense is proved beyond a reasonable
doubt. The fact that a person has been arrested, confined, or indicted for, or
otherwise charged with, the offense gives rise to no inference of guilt at his trial. 
The law does not require a defendant to prove his innocence or produce any
evidence at all. The presumption of innocence alone is sufficient to acquit the
defendant, unless the jurors are satisfied beyond a reasonable doubt of the
defendant's guilt after careful and impartial consideration of all the evidence in
the case.


 The prosecution has the burden of proving the defendant guilty and it must
do so by proving each and every element of the offense charged beyond a
reasonable doubt and if it fails to do so, you must acquit the defendant.


 It is not required that the prosecution prove guilt beyond all doubt; it is
required that the prosecution's proof excludes all "reasonable doubt" concerning
the defendant's guilt.


 A "reasonable doubt" is a doubt based on reason and common sense after a
careful and impartial consideration of all the evidence in the case. It is the kind
of doubt that would make a reasonable person hesitate to act in the most
important of his own affairs.


 Proof beyond a reasonable doubt, therefore, must be proof of such a
convincing character that you would be willing to rely and act upon it without
hesitation in the most important of your own affairs.


 In the event you have a reasonable doubt as to the defendant's guilt after
considering all the evidence before you, and these instructions, you will acquit
him and say by your verdict "not guilty."



Geesa, 820 S.W.2d at 162.
7.   However, in later cases, where only a partial but substantially correct Geesa charge
defining reasonable doubt was given without objection or where there was an unintended omission
of a phrase in the Geesa definition, a harm analysis was held permissible under article 36.19 of the
Code of Criminal Procedure and Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). 
See State v. Toney, 979 S.W.2d 642, 644-45 (Tex. Crim. App. 1998) (only first three paragraphs of
the Geesa definition submitted); Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998).
8.   The Court of Appeals, speaking through Justice J. Harvey Hudson, reviewed at length the
history of the use of the term "reasonable doubt" in jury instructions and the controversy over
defining the term.
9.   The Phillips charge is the same as the instant case except the word "possible" is missing
between "all" and "doubt" in the first sentence in the Phillips charge.
10.   The Paulson decision applied retroactively to Paulson's trial since otherwise there would
have been no case or controversy permitting the Paulson decision to be made by the Court of
Criminal Appeals. 43 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and
Procedure § 36.14 (2d ed. Supp. 2002).
11.   The three formulations were the "based on reason and common sense" language, the
language of "hesitate to act in the most important of his own affairs," and the language of "willing
to rely and act upon without hesitation in the most important of your own affairs." The latter two
formulations may appear similar but are contrasting. The "willing to act without hesitation"
definition of reasonable doubt suggests action, while the "hesitate to act" suggests inaction. See
Craig Hemmens et al., Doubt Over Reasonable Doubt In Texas, 59 Tex. Bar. Journal 130, 139 (Feb.
1996).