IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1202-03






THOMAS KERR GRAY, III, (1) Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY





 Keasler, J., delivered the opinion of the Court, joined by Keller, P.J., and Womack,
Hervey, and Holcomb, JJ. Meyers, J., filed a dissenting opinion. Price and Johnson, JJ.,
concurred in the result. Cochran, J., filed a dissenting opinion in which Meyers, J.,
joined.


O P I N I O N 



 The State charged Thomas Kerr Gray, III, with driving while intoxicated due to
alcohol consumption. Evidence at trial showed that Gray was taking anti-depressant
medication at the time. The jury instructions authorized finding that Gray was intoxicated
if he took drugs which made him more susceptible to the influence of alcohol than he
otherwise would have been, and therefore became intoxicated from the alcohol. We
conclude that this jury charge properly applied the law to the facts of this case.

I. FACTS


 The day after Tropical Storm Allison flooded Houston in 2001, Michael Whitesides
was driving his brand new pick-up truck on a wet, muddy road. The car behind him, he later
learned, was driven by 17-year-old Gray. He noticed Gray because Gray "seemed . . .
unaware" and "was one foot off [Whitesides's] bumper." When Whitesides's tires inevitably
sprayed mud on Gray's windshield, Gray "erratically pulled to the median," then "cut back
into traffic, across the inside lane, cutting people off. [He] got to the outside lane, and
approached [Whitesides] from the rear at a high rate of speed." Gray then rear-ended
Whitesides's truck. When Whitesides approached Gray to confront him, Gray's radio was
playing "very loud" and Gray was "not acting normal, at all."

 The police arrived and, noticing Gray's constricted pupils and the smell of alcohol on
his breath, conducted field sobriety tests. Gray failed the tests and was arrested for driving
while intoxicated. Gray told the police that he was taking anti-depressant medication.

II. PROCEDURAL HISTORY

 The State charged Gray by information with misdemeanor DWI, alleging that he "did
then and there unlawfully while intoxicated, namely not having the normal use of his mental
and physical faculties by the reason of the introduction of ALCOHOL into his body, operate
a motor vehicle in a public place." 

 Gray's father testified at trial that Gray had been undergoing treatment for
psychological problems for the last three years. He had been prescribed four medications -
Respiratol, Zoloft, Klonopin, and Depical - during the general time period of the accident,
but on that day he was taking two or three of them. His father indicated that the medications
caused "disorientation" and "dizziness." Gray's father also testified that Gray was not
drinking any alcohol that day - "he couldn't have."

 Gray's stepmother testified that Gray was on three medications at the time of the
accident. She also said that he had just started taking Depical three days before the incident
and that Depical made him very disoriented.

 The State's chemist testified that the drugs were anti-depressants that have a
depressant effect on the central nervous system. Alcohol had the same effect. "And, when
you add one depressant medication to another depressant medication, it can have, what's
called, an 'addictive [sic] effect.' Sometimes, what's described as a 'synergistic effect.' 
Where the two medications interact in an inappropriate way and accelerate the action of one
medication." She said that effect could manifest itself even if the person had only a small
amount of alcohol. 

 The court's proposed jury charge stated as follows:

 You are further instructed that if a Defendant indulges in the use of a
drug, to wit, Respiratol, Zoloft, Klonopin, and/or Depical, to such an extent
that he thereby makes himself more susceptible to the influence of alcohol than
he otherwise would have been, and by reason thereof becomes intoxicated
from recent use of alcohol, he would be in the same position as though his
intoxication was produced by the use of alcohol alone.

The application paragraph of the charge instructed the jury to convict if it found that Gray
was driving while intoxicated "by reason of the introduction of alcohol into his body, either
alone or in combination with Respiratol, Zoloft, Klonopin and/or Depical."

 Gray objected to the charge on the grounds that it did not follow the State's
information. The prosecutor responded that the charge was appropriate under Sutton v.
State. (2) The judge overruled Gray's objection.

 The jury found Gray guilty of misdemeanor DWI, and the judge assessed punishment
at 180 days in the Harris County Jail, suspended for one year.

III. ON APPEAL


 On appeal, Gray argued that the trial judge erred in charging the jury on the
"synergistic effect" of drugs and alcohol because (1) it was not part of the law applicable to
the case, (2) it was a comment on the weight of the evidence, (3) it was misleading and
confusing, and (4) Gray was not prosecuted under a combination theory. The Court of
Appeals disagreed. (3) It concluded, in relevant part, that the charge incorporated the law
applicable to the case, relying on our plurality opinion in Sutton. (4)

 Gray petitioned this Court for discretionary review on two grounds. We granted the
second ground, which contends that the Court of Appeals erred in holding that the instruction
constituted the law applicable to the case when Gray was not charged with intoxication by
a combination of alcohol and drugs.

IV. ANALYSIS


 Our Legislature has made clear that a trial judge's charge to the jury must set forth
"the law applicable to the case." (5) Relying on that statute, we have held that "[a] trial court
is required to fully instruct the jury on the law applicable to the case and to apply that law to
the facts presented." (6) It is not enough for the charge to merely incorporate the allegation in
the charging instrument. Instead, it must also apply the law to the facts adduced at trial. This
is because "[t]he jury must be instructed 'under what circumstances they should convict, or
under what circumstances they should acquit'." (7) Jury charges which fail to apply the law to
the facts adduced at trial are erroneous. (8)

 This case involves a specific kind of jury charge known as the "synergistic effect"
charge. We begin with the background of this charge.

A. The Synergistic Effect Charge


 Originally, our DWI statute did not define "intoxication." In Heard v. State, (9) we
addressed a synergistic effect charge under that statute. (Although Heard was decided after
the statute had been changed, the defendant's offense had occurred under the previous
version of the statute.) There, the information alleged driving under the influence of liquor. 
During trial, the defense presented evidence that the defendant had been taking several
medications at the time of the offense. The evidence showed that the medications combined
with alcohol "might cause an individual to lose his or her mental alertness quicker than if he
or she was drinking only alcohol." (10)

 The jury charge instructed the jury that "if a Defendant indulges in the use of drugs
to such an extent that he thereby makes himself more susceptible to the influence of
intoxicating liquor than he otherwise would have been and by reason thereof becomes
intoxicated from the recent use of intoxicating liquor, he would be in the same position as
though his intoxication was produced by the use of intoxicating liquor alone." (11) The
application paragraph of the charge then told the jury it could convict if it found that the
defendant was "under the influence of intoxicating liquor, either alone or in combination with
drugs." (12)

 We found this charge to be proper because it applied the law to the facts of the case. 
We explained that the "combination of liquor and drugs which would make an individual
more susceptible to the influence of the liquor is in effect equivalent to intoxication by liquor
alone." (13)

 The 68th Legislature amended the DWI statute, effective January 1, 1984. (14) After that
amendment, the statute defined "intoxicated" as, among other things, "not having the normal
use of mental or physical faculties by reason of the introduction of alcohol, a controlled
substance, a drug, or a combination of two or more of those substances into the body." (15)

 We addressed the effect of this statutory change on DWI charging instruments in
Garcia v. State. (16) There, the information charged the defendant with driving while
intoxicated. It did not specify whether the intoxication was a result of alcohol, drugs, or a
combination of both. As a result, the defendant moved to quash. The trial court denied the
motion, but the Court of Appeals reversed, holding that the motion should have been
granted. (17)

 We agreed with the Court of Appeals. We concluded that, to provide sufficient notice
to a defendant, a charging instrument alleging intoxication under the new DWI statute had
to allege the intoxicant. (18) Having reached that conclusion, we then added that, since the
statute defined different methods of becoming intoxicated, "the type of intoxicant used . . .
becomes an element of the offense and critically necessary to the State's proof." (19) In the
following and final paragraph of the opinion, we returned to the notice rationale, concluding
that the defendant in Garcia had been denied notice and that the trial court erred in denying
his motion to quash. (20)

 Our holding in Garcia seemed to call Heard into question. In Heard, we had
concluded that a synergistic effect jury charge was permissible even if a combination theory
had not been alleged in the charging instrument. But at the time of Heard, the DWI statute
did not define intoxication, and the State was not required to allege the intoxicant in the
charging instrument to provide the defendant notice. Moreover, at the time of Heard, the
intoxicant was not an element of the offense. Now, under Garcia, the State was required to
allege the intoxicant in its charging instrument both for notice and because the intoxicant was
an element of the offense. And the new statute specifically put forth the option of alleging
"a combination" theory of intoxication. Under this new statute and these new pleading
requirements, could a jury still be charged on the synergistic effect of more than one
intoxicant if the State had not alleged a "combination" theory in its indictment? 

 We were faced with that question in Sutton v. State, (21) and the Court was unable to
reach a majority. In that case, the information charged the defendant with driving while
intoxicated due to alcohol. At trial, the defendant testified that he had taken two pills of a
prescription medication which, when mixed with two beers, put him in a "precarious
situation." (22) The defense expert testified that the prescription medication could cause a
person to appear intoxicated and that alcohol would enhance the effect of the drug. (23) The
judge instructed the jury on the synergistic effect of the prescription medication and alcohol,
permitting the jury to convict if it found that "the defendant was intoxicated by reason of the
introduction of alcohol into his body, either alone or in combination with Klonopin." (24)

 A four-judge plurality concluded that these facts were identical to Heard and that our
opinion in Heard was dispositive. (25) The plurality stated that the jury charge did not expand
on the allegations in the information; rather, it "allowed conviction only if the jury found that
[the defendant] had been intoxicated with alcohol, either alone or in combination with a drug
that made him more susceptible to the alcohol. In either case, the jury had to find that [the
defendant] had been intoxicated with alcohol, not with the drug." (26) The plurality also noted
that "[o]nce [the defendant] introduced this evidence, the trial court was obligated to instruct
the jury on the law as explicated in Heard." (27) The plurality did not discuss the fact that the
DWI statute had changed since Heard. And it concluded that Garcia was irrelevant because
Garcia had involved a motion to quash, and Sutton had not filed such a motion. (28)

 Four judges dissented. In his dissenting opinion, Judge Maloney argued that the
plurality failed to "account for changes in the controlling statute" (29) and that the plurality's
"reasoning might have made sense at the time of the Court's opinion in Heard since at that
time there was no separate statutory category for a combination of drugs and alcohol, [but]
it is not consistent with the current version of the statute." (30)

 The law was still in this uneasy state when we decided Rodriguez v. State (31) several
years ago. There, the indictment alleged that the defendant drove while intoxicated due to
alcohol. At trial, defense evidence showed that the defendant had been taking Contac, an
over-the-counter medication, which made him drowsy. The State's expert then testified to
the effects of Contac as well as the effects of mixing Contac with alcohol. The charge
defined "intoxicated" as not having the normal use of mental or physical faculties "by reason
of the introduction of alcohol, a drug, or a combination of both of those substances, into the
body." (32) The application paragraph of the charge then permitted the jury to convict if it
found that the defendant was intoxicated "by the reason of the introduction of a combination
of unknown drugs and alcohol into his body." (33)

 We recognized that this jury charge was a far cry from the ones in Heard and Sutton. 
In those cases, the charge allowed conviction only if the jury found that the defendant had
been intoxicated with alcohol, either alone or in combination with a drug that made him more
susceptible to the alcohol. But in Rodriguez, the charge allowed the jury to convict if it
found the defendant was intoxicated by a combination of unknown drugs and alcohol. There
was "no 'additional susceptibility' theory put to the jury." (34) It therefore "improperly
expanded on the allegations set forth in the information, and authorized a conviction on a
theory not alleged in the charging instrument." (35)

 We noted in Rodriguez that, "despite its reliance on Heard, the [Sutton] plurality
placed no significance on the fact that the type of intoxicant was not an element of the
offense under the statute in Heard but was an element of the offense under the statute." (36) We
resolved Rodriguez without having to address that issue because "regardless of one's view
of the relevance of Garcia to this issue, the jury charge in this case falls short of the
requirement established in Sutton." (37)

B. Application


 In this case, the State alleged that Gray was under the influence of alcohol while
driving, and Gray presented evidence that he was under the influence of anti-depressants at
the time of the offense. The trial judge's charge to the jury incorporated both the State's
allegation and the evidence presented at trial by instructing the jury that it should convict if
it found that Gray had indulged in the drugs "to such an extent that he thereby makes himself
more susceptible to the influence of alcohol than he otherwise would have been, and by
reason thereof becomes intoxicated from recent use of alcohol." Under our caselaw, this
charge instructed the jury on the law applicable to the case and applied that law to the facts
presented. (38) So this was a standard "synergistic effect," and therefore valid, jury charge.

 Gray disagrees, arguing that this charge expanded on the scope of the State's
information. He says that according to Garcia, the intoxicant is an element of the offense
of DWI. Since the DWI statute under which Gray was charged lists six possible (though
overlapping) intoxicants - "alcohol, a controlled substance, a drug, a dangerous drug, or a
combination of two or more of those substances, or any other substance" (39) - Gray argues that
the State must allege which intoxicant and prove that same intoxicant. By allowing the State
to allege "alcohol" but prove "combination," Gray says, the State is permitted to expand upon
the theory alleged in the charging instrument, violating due process.

 The State responds that this charge was virtually identical to the one given in Sutton. 
It also contends that Garcia is poorly reasoned and should be overruled. Gray replies that
it is actually Sutton that is poorly reasoned.

1. Intoxicant as Element of Offense

 We begin with Garcia's statement that the intoxicant is an element of the offense of
DWI.

 Due process provides that no person may be convicted of a criminal offense unless
every element of the offense is proved beyond a reasonable doubt. (40) Our Penal Code defines
the elements of the offense to be the forbidden conduct, the required culpability, any required
result, and the negation of any exception to the offense. (41) As a practical matter, we define
the elements of individual offenses on a case-by-case basis. Under the previous statute,
V.A.T.S. Art. 6701l-1, we held that the elements of misdemeanor DWI were that: (1) a
person (2) drives or operates (3) a motor vehicle (4) in a public place (5) while intoxicated. (42) 
The current statute, § 49.04(a), says essentially the same thing as the previous one, and the
elements of the offense are: (a) a person (b) is intoxicated (c) while operating (d) a motor
vehicle (e) in a public place. 

 In Garcia, we said that an additional element was the type of intoxicant. We made
this statement even though the disputed issue in the case concerned notice. As a result, the
statement was dicta, unnecessary to the resolution of the case. Moreover, we did not cite any
authority for this conclusion, nor did we explain it. There are several problems with the
statement.

 First, it contradicts the statutory definitions of what constitutes an element of the
offense. The intoxicant is not the forbidden conduct, the required culpability, any required
result, or the negation of any exception to the offense. (43) The mere fact that the DWI statute
separately defines intoxication does not automatically elevate the intoxicant to the status of
an element of the offense. 

 Second, Garcia's dicta conflicts with our caselaw regarding elements of other
offenses. In Ex parte Luna, (44) we addressed a similar issue with regard to the theft statute. 
There we concluded that the definitions of "unlawfully" in § 31.03 were not essential
elements of theft, but were evidentiary matters that need not be alleged in order to
sufficiently charge the offense of theft. (45) Like the theft statute, the DWI statute defines
"intoxicated," but that does not mean that the various intoxicants are elements of the offense. 
Instead, they are descriptive terms.

 Third, making the intoxicant an element of the offense constitutes bad public policy. 
As the State points out, when we concluded that the intoxicant was an element of the offense,
the intent of the statute was thwarted, and trials degenerated into ones like this one, where
the defense is essentially "Yes, I was intoxicated, but you alleged the wrong intoxicant,
therefore I am entitled to an acquittal." We agree with the State that permitting defendants
to "secure an acquittal merely by proving an alternative intoxicant" constitutes "an abuse of
the system . . . contrary to the plain meaning of the DWI statute, which focuses on the acts
of the defendant while intoxicated rather than the act of becoming intoxicated itself." 

 We conclude that the substance that causes intoxication is not an element of the
offense. It is not the forbidden conduct, the required culpability, any required result, or the
negation of any exception to the offense. Instead, it is an evidentiary matter. We disavow
the dicta in Garcia to the contrary. 

2. Sutton v. State


 Doing away with Garcia's element-of-the-offense language disposes of Gray's claim
that due process was violated due to the State alleging one offense and convicting on another. 
But it does not refute Gray's argument entirely. We still must address whether this jury
charge expanded on the allegations in the State's charging instrument. For this, we return
to Sutton.

 In Sutton, the information alleged alcohol as the intoxicant, and the evidence at trial
showed drugs and alcohol. The judge instructed the jury on the synergistic effect of 
prescription medication and alcohol. The plurality said that the jury charge did not expand
on the allegations in the information; rather, it "allowed conviction only if the jury found that
[the defendant] had been intoxicated with alcohol, either alone or in combination with a drug
that made him more susceptible to the alcohol. In either case, the jury had to find that [the
defendant] had been intoxicated with alcohol, not with the drug." (46) The charge in this case,
being nearly identical to the one in Sutton, should be valid, unless there is some reason that
the Sutton plurality erred.

 Gray argues that Sutton is "flat-out wrong" because the plurality failed "to come to
grips with the fact" that the statute changed after Heard was decided. It is true that the DWI
statute was amended after Heard. But we believe the Sutton plurality was still correct.

 Gray argues that if the statute provides for six different intoxicants, then the jury
charge must include only the intoxicant alleged in the State's charging instrument, otherwise
the jury charge expands on the scope of the State's allegations. But there are two flaws in
this position. First, the jury charge in this case did not permit the jury to convict on a
completely separate intoxicant. Instead, it permitted conviction if the consumption of one
intoxicant made Gray more susceptible, and therefore intoxicated, by the charged intoxicant. 
So even if Gray's premise were correct, this particular jury charge would be valid because
it still required the jury to find that Gray was intoxicated due to alcohol, which is what the
State alleged.

 Second, the six possible definitions of intoxication in the statute are not mutually
exclusive - indeed, they are patently overlapping. The definitions of intoxication in the DWI
statute are in this way unique from other criminal statutes. An allegation of "controlled
substance" overlaps with "drug" and "dangerous drug." An allegation of "combination"
overlaps with "alcohol" and "drug." As a result, these are not really six different intoxicants.

 Here, the State alleged intoxication by alcohol, and the jury charge permitted finding
intoxication by alcohol if the defendant was more susceptible to the alcohol due to drugs. 
This charge did not permit conviction on a theory unalleged in the charging instrument. This
is still the same theory of committing DWI - the "loss of faculties" theory. (47)

 Gray also argues that the Court of Appeals' opinion, and therefore, Sutton, conflicts
with Rodriguez. We disagree. As explained above, the jury charge in Rodriguez was quite
different from the one in Sutton. The charge in Rodriguez did not put forth an "additional
susceptibility theory" to the jury. It therefore "improperly expanded on the allegations set
forth in the information, and authorized a conviction on a theory not alleged in the charging
instrument." (48) The same is not true here or in Sutton. In both this case and in Sutton, the
charge permitted conviction only if the drugs made the defendant more susceptible to the
alcohol. Both this charge and the one in Sutton still required intoxication due to alcohol.

 We conclude that the Sutton plurality was correct to uphold the synergistic effect jury
charge, even though the DWI statute changed after Heard. The charge in this case was
essentially identical to the one in Sutton and different from the one in Rodriguez. It permitted
the jury to convict if Gray's drug use made him more susceptible to alcohol, but it still
required intoxication due to alcohol. Therefore, it did not expand on the allegations in the
charging instrument, and it properly applied the law to the facts of the case.

 Judge Cochran contends in dissent that we should dispense with synergistic jury
charges entirely, but we do not believe her arguments rise to our high standard for overruling
precedent. (49) Additionally, the crux of her argument is really that this charge was a comment
on the weight of the evidence. But that issue was presented in Gray's first ground for review,
which we refused. We do not address that claim today. Judge Meyers argues that this charge
was erroneous because it permitted the jury to convict Gray on an allegation not within the
charging instrument. But as discussed above, this charge still required the jury to find that
Gray was intoxicated by alcohol. 

 Finally, the State argues that Garcia's notice holding should be overruled. We have
already concluded that the charge in this case was valid. Reaching out to address the validity
of Garcia's notice holding would be dicta. And we have rejected this argument before. (50) 
We decline to consider it today.

V. JUDGMENT


 We affirm the judgment of the Court of Appeals.


DATE DELIVERED: December 15, 2004

PUBLISH
1. The information charging "Thomas Kerr Gray, III," was amended at trial to
"Thomas Kerr Gray, II." But the judgment and the appellate court's opinion both refer to
"Thomas Kerr Gray, III." For the sake of consistency, our style also uses this name.
2. 899 S.W.2d 682 (Tex. Crim. App. 1995) (plurality op.).
3. Gray v. State, No. 01-02-00602-CR (Tex. App. - Houston [1st], delivered June 12,
2003) (not designated for publication).
4. Id., slip op. at 4 (citing Sutton, 899 S.W.2d at 685).
5. Tex. Code Crim. Proc. art. 36.14 (Vernon Supp. 2004).
6. Jackson v. State, 633 S.W.2d 897, 899 (Tex. Crim. App. 1982); Rider v. State, 567
S.W.2d 192, 195 (Tex. Crim. App. 1978).
7. Ex parte Chandler, 719 S.W.2d 602, 606 (Tex. Crim. App. 1986).
8. Perez v. State, 537 S.W.2d 455, 456 (Tex. Crim. App. 1976); Harris v. State, 522
S.W.2d 199, 200 (Tex. Crim. App. 1975).
9. 665 S.W.2d 488 (Tex. Crim. App. 1984).
10. Id. at 489.
11. Id. 
12. Id. 
13. Id. at 490.
14. Acts 1983, 68
th Leg., R.S., ch. 303, p. 1574, § 3; see also Forte v. State, 686
S.W.2d 744, 746 (Tex. App. - Fort Worth 1985), aff'd in part and rev'd in part, 707 S.W.2d
89 (Tex. Crim. App. 1986).
15. See former Art. 6701l-1(a)(2)(A). The statute was amended again in 1993 to add
"or any other substance." Act of June 19, 1993, 63rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.
Gen. Laws 3699. That is how today's version of the statute, Tex. Pen. Code § 49.01(2)(A),
reads.
16. 747 S.W.2d 379 (Tex. Crim. App. 1988).
17. Garcia v. State, 720 S.W.2d 655 (Tex. App. - San Antonio 1986), aff'd, 747
S.W.2d at 381.
18. 747 S.W.2d at 381.
19. Id.
20. Id.
21. 899 S.W.2d 682.
22. Id. at 683-84.
23. Id. at 684.
24. Id.
25. Id. at 685.
26. Id.
27. Id.
28. Id.
29. Id. at 685 (Maloney, J., dissenting).
30. Id. at 688.
31. 18 S.W.3d 228 (Tex. Crim. App. 2000).
32. Id. at 229.
33. Id. at 230.
34. Id. at 232.
35. Id.
36. Id. at 231.
37. Id. at 232.
38. See Jackson, 633 S.W.2d at 899; Rider, 567 S.W.2d at 195.
39. See Tex. Pen. Code § 49.01(2)(A).
40. Jackson v. Virginia, 443 U.S. 307, 316 (1979); Griffin v. State, 614 S.W.2d 155,
159 (Tex. Crim. App. 1981).
41. Tex. Pen. Code § 1.07(a)(22).
42. Solis v. State, 787 S.W.2d 388, 390 (Tex. Crim. App. 1990), overruled on other
grounds, Carter v. State, 810 S.W.2d 197, 200 (Tex. Crim. App. 1991).
43. See Tex. Pen. Code § 1.07(a)(22).
44. 784 S.W.2d 369 (Tex. Crim. App. 1990).
45. Id. at 371; see also Flowers v. State, 815 S.W.2d 724, 727 (Tex. Crim. App. 1991).
46. 899 S.W.2d at 685.
47. See Carter, 810 S.W.2d at 200.
48. 18 S.W.3d at 232.
49. Paulson v. State, 28 S.W.2d 570, 571 (Tex. Crim. App. 2000).
50. Saathoff v. State, 891 S.W.2d 264, 266 (Tex. Crim. App. 1994); Carter, 810
S.W.2d at 199-200.